**PRELIMINARY STATEMENT**

Plaintiffs request permission from the Court to Amend their complaint filed November 16, 2007. In addition to amending to address defendants request for a more definite statement, Plaintiffs intend to add claims that have occurred since the November 16, 2007 filing as well as add additional claims and facts that Plaintiffs believe will add clarity to Plaintiffs' Complaint. Plaintiff will also present a complaint that better identifies which Plaintiff is making what allegation and against what defendant.

In March 2007, Plaintiff Carol Allen on behalf of S.M. entered into a settlement agreement to resolve education issues. The issues plaintiffs' present in their complaint are not brought to address any educational issue but to address unlawful and unconstitutional physical violence, harassment, discrimination and retaliation.

In its moving papers Defendants make a statement that Plaintiffs December 2006, Due Process request is a tacit admission that these current allegations relate to education.

In November 2006, Carol Allen notified her counsel that the school the District placed her child at, was not working out. S.M. was being beat up by older students, kicked in the groin, attacked by staff who would apologize and threatened with gun violence by other students. S.M. is not a child who fights but the district placed him at a school where children had violent behaviors. S.M.'s classroom teacher left, leaving his class to be taught by instructional assistants and occasionally supervised by the principal. S.M. was attacked on the school bus one day and taken off the bus by the principal on another day leaving him stranded in Vallejo. S.M's mother is wheelchair bound and relies on paratransit. She could not get to her child and had to search for someone who could bring him home.

S.M.  didn't return to school due to the threats and Carol Allen requested that he be placed elsewhere. The district refused and eventually put Ms. Allen into truancy proceedings, with threats of criminal repercussions.  Plaintiff had no choice but to file Due Process. The due process was not filed in anticipation of any ruling. These facts are documented and Plaintiff would appreciate an opportunity to amend their complaint to add additional allegations of abuse and retaliation by defendants, which include the district filing due process against Carol Allen after this complaint was filed and dismissing it after Plaintiff declined to mediate.  Plaintiffs suspect the district was attempting to acquire another settlement agreement that would allow it to object to the abuses that have occurred since March 7, 2007 settlement agreement.

Had Ms. Allen not signed the Settlement Agreement on March 7,  2007, she would have subject to a truancy hearing on March 8, 2007.

## STATEMENT OF ISSUES TO BE DECIDED

1) That the March 7, 2008 settlement agreement extends only to West Contra Costa Unified School District?

2) Whether physical, psychological and other abuses, retaliation and deliberate indifference are legitimately related to S.M.'s educational program and whether it is against public policy to use a settlement agreement that by its terms limits itself to student's "educational program" to bar issues that could not be presented in the administrative forum?

3) Whether Plaintiff's S.M. and Carol Allen have a right to relief through their First, Fourth, Eighth and Eleventh Causes of Action?

4) Whether  Plaintiff P.M. does posses enforceable rights under Section 1983 for his First, Fourth and Eleventh Causes of Action.

5) Whether P.M. Has A Right to Proceed on his Claim of intentional discrimination under Title VI?

6.) Whether P.M. is an indirect victim of harassment and retaliation and entitled to protection under federal disabilities Rights Act.

7) Whether P.M. has standing?

8)  Does 11th Amendment Immunity apply to all Defendants?

9) State Law Claims

7) That the ADA's prohibition of retaliation protects all individuals who oppose any act or practice made unlawful by the ADA.

### THE LEGAL STANDARD FOR 12(b)(1) MOTIONS

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction over the claim. Fed.R.Civ.P. 12(b)(1). When reviewing a Rule 12(b)(1) motion, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.

A court may not take judicial notice of a fact unless it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(**b**).

Defendant presents the March 7, 2007 Settlement agreement to prove the fact that the issues in the November 16, 2007 complaint relate to education. Plaintiffs do not agree that physical, verbal or psychological abuse and harassment serve an educational purpose. The January 10, 2007 Order of the Honorable Claudia Wilken, presented by Defendants do not prove that the abuses and harassment plaintiffs allege of are related to education.

Plaintiffs object to the entry of the documents to prove that the abuses alleged in Plaintiff's complaint relate to education. As a general rule, "documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *United States v. S. Cal. Edison Co.*,

1    300 F. Supp. 2d 964, 975 (E.D. Cal. 2004). Thus, even though a document may be a matter of

2    public record, "[a] court may not take judicial notice of one party's opinion of how [the

3    document] should be interpreted." *Id.* at 974.

4

5                    **THE LEGAL STANDARD FOR 12(b)(6) MOTIONS.**

6    A ruling that Plaintiff has failed to state a claim under 12(b)(6) may be granted only in

7    extraordinary circumstances. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.

8    1981)._Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is

9    entitled to relief". The party bringing a 12(b)(6) motion has the burden to show that Rule 8(a)(2)

10   has not been met. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991) The

11   court's role at the 12(b)(6) stage is not to evaluate the strength or weakness of claims. *Jacobson v.*

12   *Hughes Aircraft_Co.* (9th Cir. 1997) 105 F.3d 1288, 1292. A Plaintiff's brief may always be used

13   "to clarify allegations in her complaint whose meaning is unclear." *Pegram v. Herdrich* (2000) 530

14

15   U.S. 211, 230, fn. 10. "New" facts in Plaintiff's opposition must be considered to determine if to

16   grant leave to amend or to dismiss with or without prejudice. *Orion Tire Corp. v. Goodyear Tire*

17   *& Rubber Co.* (9th Cir. 2001) 268 F.3d 1133, 1137.

18

19                              **SUMMARY OF ARGUMENT**

20

21        The claim by Defendant that the abuses and harassment claimed by Plaintiffs' were related to

22   S.M.'s educational program is a matter of fact to be proven at trial, it is not an issue that can be

23   addressed by a 12(b)1 or a 12(b)6 motion.

24

25      Defendants contend that the abuses alleged in Plaintiffs' complaint are related to education.

26   Defendants claim that an aide telling another student to beat up a child and then watching as that

27   child screams and runs to relate to education. Defendants attempt to argue that a physical assault

28

HODGE LAW
P.O. Box 5100

by an aide, and allowing other students to hit a child that does not hit back, relates to education.

A principal ordering staff to handcuff a child who displays no sign of violence or aggression is not

a part of education. Denying a student his free lunch and requiring him to sit in the room while his

classmates eat around him is not educational. If these things are related to education then the

district must explain what they are training children to become? The constant, consistent, and

district wide abuses S.M. suffered that caused him to contemplate suicide are not related to

educational, and to claim that they are is offensive and a dangerous precedent for education.


Issues to Be Decided

   **That the March 7, 2008 settlement agreement extends only to West Contra Costa
   Unified School District.**

      The release does not apply to Defendants sued individually or in their official capacity.  If the

court finds that West Contra Costa Unified is released, such release should not extend to parties

not listed in the agreement. Defendants moving papers fail to limit the defendant it argues is

released.  The only defendant that was party to the agreement was West Contra Costa Unified

School District. It does not extend to other parties.


   **Whether physical, psychological and other abuses, retaliation and deliberate
   indifference are legitimately related to S.M.'s educational program and whether it is
   against public policy to use a settlement agreement that by its terms limits itself to
   student's "educational program" to bar issues that could not be presented in the
   administrative forum?**

   The March 7, 2007 agreement is not a barr to the claims in Plaintiffs' November 16, 2007 filing.

The March 2007 settlement spoke solely to claims  relating to educational issues.  Defendant

cannot now expand the clear language of that agreement, nor can Defendants reasonably claim that the abuses alleged by Plaintiffs relate to education.

**The IDEA defines Educational Program**

The term "educational program" and the things that "relate" to that program are defined by the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 ("IDEA"). To interpret the March 7, 2007 settlement agreement, in a correct and reasonable manner, and to understand the common and accepted usage of what relates to an educational program a review of the IDEA is necessary. 20 USC 1401 (14) of The Individuals with Disabilities Education Act as reauthorized on Dec. 3, 2004, defines and give the basis of the term "Educational Program."

The term "individualized education program" or "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414 (d) of this title. Section 1414 (d) states in part:

The term "individualized education program" or "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section and that includes -
   (i) a statement of the child's present levels of educational performance, including -
      (I) how the child's disability affects the child's involvement and progress in the general curriculum; or
      (II) for preschool children, as appropriate, how the disability affects the child's participation in appropriate activities;
   (ii) a statement of measurable annual goals, including benchmarks or short-term objectives, related to -
      (I) meeting the child's needs that result from the child's disability to enable the child to be involved in  and progress in the general curriculum; and
      (II) meeting each of the child's other educational needs that result from the child's disability;

 20 USC 1401 (26)   Describes items that are related to an educational program:

Related services (A) In general

The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

Nothing in these provisions imply or state that physical punishment, hazing, verbal abuse or cruelty to a child are part of an educational program. It is unreasonable to argue that such actions are related or arise from educational programs or that a person should expect physical or other forms of abuse to be considered as a part of education.

In its moving papers, page 19 line 9, Defendants' state "agreements typically include a release of all claims, known or unknown, which were or could have been brought in the underlying proceeding." The jurisdiction of the Office of Administrative Hearings to hear due process claims under the IDEA is limited. 20 U.S.C. § 1415(b)(6)(A) and Educ Code § 56501, subd. (a) authorizes that forum to handle:

proposal or refusal to initiate or change the identification, assessment, or educational placement of a child, or the provision of a FAPE to a child, or the refusal of a parent or guardian to consent to assessment of a child, or a disagreement between a parent or guardian and the district as to the availability of a program appropriate for a child.

*Witte v. Clark* 197 F.3d 1271 (9th Cir.1999), was a case involving school brutality. The court did not require a party to exhaust administrative remedies prior to hearing its lawsuit in its court because the educational issues had been resolved and the physical and psychological abuses, were not related to education and remedy could not have been had in the administrative forum. *Witte,*

recognized that an unlawful act, committed upon a disabled child, during the school day, does not

transform that act into an educational component.

The IDEA is not a shield for school district and their employees to brutalize and violate the

civil rights of disabled students. A district cannot and must not ever be allowed to claim that

physical abuse, hazing, intentional psychological harassment and systematic oppression of

disabled children relate to education.

Plaintiffs' complaint presents the educational background and environment in which the abuses

occurred but it does not ask the court to resolve educational issues. The March 7, 2007, settlement

agreement introduced by Defendants is evidence that all issues related to education have been

resolved and exhausted. The court has jurisdiction to address the issues that did not arise or relate

to child's educational program which were not capable of redress within the administrative forum,

Defendant has presented no law that precludes litigation of non-educational issues in the

appropriate forum after educational issues are resolved.  This court has proper jurisdiction.

**PRIOR ORDER**

Defendants' moving papers present the January 10, 2007 Order dismissing Plaintiffs complaint.

Defendants fail to note that the complaint was dismissed without prejudice subject to exhausting

administrative remedies of educational claims. To interpret the prior dismissal as a conclusion that

all Plaintiffs claims were and are related only to education asks the court to find that brutality is

related to education and serves a legitimate educational purpose. The Order is clear that Plaintiffs

have a right to refile after exhaustion of administrative remedies.

The Honorable Claudia Wilken found in her January 10, 2007 Order that:

Page 10 line 4 of that order states "Plaintiffs must exhaust administrative remedies
before bringing suit under the IDEA, the ADA, the Rehabilitation Act, section 1983

1    and the Unitied States Constitution."

2    Page 10 Line 9 of the order "Plaintiffs' complaint is dismissed without prejudice to
3    refiling after Plaintiffs have exhausted their claims, as required by Ninth Circuit law.
     The state law claims are dismissed without prejudice to refiling in state court."
4

5    **PUBLIC POLICY**

6    *W.B. v. Matula* 67 F.3d 484 (3d Cir.1995), discussed the public policy and propriety of a

7    district demanding and receiving a release of damage claims in exchange for providing services to

8
     which a student is entitled. The court concluded that a settlement agreement, which was made in an
9
10   administrative proceeding did not bar such claims as a matter of law.

11           Under federal law, a valid release must be supported by consideration. *Maynard v. Durham*

12   *& S.R. Co.,* 365 U.S. 160, 162-63. Giving a party something to which he has an absolute right is

13   not consideration to support that party's contractual promise. Maynard v. Durham & S.R. Co.,
14
     365 U.S. at 162
15
16       The settlement agreement provided S.M. what he was entitled. The agreement provided him with

17   "make up" occupation therapy, and tutorial of one hour per day while student waited to be placed

18   in a school.  These are things he was entitled to.

19     To induce parent to sign the agreement Defendant West Contra Costa Unified School District
20
     offered her a placement that she and child had long desired. The District also promised to cancel
21
22   the truancy proceedings it had instituted, which would have required her to go to a hearing within

23   that week. Parent felt she was defrauded into signing the agreement, because the placement never

24   existed and the District had reason to know that it did not at the time it said the placement was
25
     open.
26

27

28

**THE SETTLEMENT AGREEMENT**

*Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983) states that, a release of claims for violations of civil and constitutional rights must be voluntary, deliberate and informed. Although legal representation is an important factor in assessing the voluntariness of a release of federal rights, it is not dispositive. Whether such a release was voluntarily executed is a question of fact to be determined from all the circumstances. See *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir.1983).

If Ms. Allen had not signed the agreement she and her child would have been subject to the truancy proceedings and potential criminal action or punishment/fines. The district instituted the truancy action with the full information that S.M.'s classroom teacher had resigned that his class was covered by aides, and that he was being beat up nearly daily by older kids at his school. Allen made multiple requests to the district to remove her child from the placement but they would not. to do with Defendants motion and everything to do with protecting the child.

After the settlement agreement was signed and returned, Plaintiff made a motion to void the agreement and reopen the case due to fraud in the inducement and mistake of a material fact. That motion was denied and Plaintiff was told to remove the matter to court. **Exhibit 1.**

**PLAINTIFF S.M. AND CAROL ALLEN'S HAVE AN ENFORCEABLE RIGHT TO RELIEF ON ALL CAUSES OF ACTION**

STATUTORY AND REGULATORY FRAMEWORK

A.  The Americans with Disabilities Act of 1990

In enacting the ADA, Congress acted to eliminate the discrimination that individuals with disabilities "continually encounter" in the form of "architectural barriers," "segregation," and "relegation to lesser services."  42 U.S.C. §§ 12101(a)(5), 12101(b)(1). Title II of the ADA

prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132.

Unlike section 504 of the Rehabilitation Act of 1973, which only covers programs receiving Federal financial assistance, title II extends to all the activities of State and local governments whether or not they receive Federal funds. Private parties may bring lawsuits to enforce their rights under title II of the ADA. The remedies available are the same as those provided under section 504 of the Rehabilitation Act of 1973. A reasonable attorney's fee may be awarded to the prevailing party.

The unconstitutional acts of West Contra Costa School District, all individual defendants and defendants in their official capacity, implicate violations of the Equal Protection Clause, the Due Process Clause, the First and Fourth Amendment, Title II ADA, and Civil Rights Act 1964. S.M. has a right to substantive due process and protected from the excessive force in a nonseizure, nonprisoner context.

All are actions enforceable by Plaintiffs and under Section 1983. *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 691 (1978) and *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) held that § 1983 liability of a local governing body lies when "action pursuant to official municipal policy of some nature caused a constitutional tort," and not on the basis of respondeat superior. Such *Monell* liability may attach based on a policy of inaction that demonstrates deliberate indifference to constitutional rights: '[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.' *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992).

*Vinson v. Thomas,* 288 F.3d 1145, 1156 (9th Cir. 2002) seems to hold that direct actions

1   against states may still be brought under Title II of the ADA.

2       The inadequacy of policy training may serve as a basis for § 1983 liability, only where the

3   failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of

4   persons with whom the policy come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389

5

6   (1989).

7       Title VI's remedial scheme includes a judicially implied private cause of action.

8   *Guardians Ass'n v. Civil Serv. Comm'n, N.Y.C.*, 463 U.S. 582, 594-95 (1983). Thus, by

9   referencing Title VI's remedial scheme, Title II (and § 504 of the Rehabilitation Act)

10  incorporate an implied private right of action.

11

12  **PLAINTIFF P.M. HAS ENFORCEABLE CLAIMS AGAINST DEFENDANTS WEST**
    **CONTRA COSTA UNIFIED SCHOOL DISTRICT, GRAIG CROSSLEY, HARRY**
13  **CULBERTSON AND THE DISTRICT BOARD.**

14
        Plaintiff P.M. alleged racial discrimination and harassment and incorporated the
15
    deprivations by reference in paragraph. P.M does not need to be disabled to suffer
16
    retaliation due to opposing disability discrimination.
17

18      P.M is an indirect victim of disability discrimination and may prove intentional discrimination

19  under Title VI. Ttitle II of the ADA prohibitions against disability discrimination are similar to the

20  Title IX prohibitions.   In *JACKSON v. BIRMINGHAM BOARD OF EDUCATION*, 544 U.S. 167

21
22  (2005) the supreme court held,

23          (a) When a funding recipient retaliates against a person *because* he complains of sex
    discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title
24  IX.  This Court has held that Title IX implies a private right of action to enforce its prohibition on
    intentional sex discrimination, *Cannon* v. *University of Chicago* ,441 U. S. 677, 690-693 , and that
25  that right includes actions for monetary damages by private persons, *Franklin* v. *Gwinnett County
    Public Schools* ,503 U. S. 60 , and encompasses intentional sex discrimination in the form of a
26  recipient's deliberate indifference to sexual harassment of a student by a teacher, *Gebser* v. *Lago
    Vista Independent School District* ,524 U. S. 274, 290-291, or by another student, *Davis* v. *Monroe
27  County Bd. of Ed.* ,526 U. S. 629, 642 .

28

1    That court then discusses indirect victims of the discrimination,

2    (c) Nor is the Court convinced by the Board's argument that, even if Title IX's private right of action
     encompasses discrimination, Jackson is not entitled to invoke it because he is an "indirect victi[m]" of
3    sex discrimination.  The statute is broadly worded; it does not require that the victim of the retaliation
     also be the victim of the discrimination that is the subject of the original complaint.  Where the
4    retaliation occurs because the complainant speaks out about sex discrimination, the statute's "on the
     basis of sex" requirement is satisfied.  The complainant is himself a victim of discriminatory
5    retaliation, regardless of whether he was the subject of the original complaint.  Cf. *Sullivan, supra* , at
     237.
6

7    P.M. was an indirect victim of the disability discrimination and a direct victim of racial

8    discrimination.

9                              **INJUNCTIVE RELIEF**

10
     P.M. maintains standing for injunctive relief. He is currently attending school in West Contra
11
12   Costa Unified School District.

13                            **11th AMENDMENT IMMUNITY**

14
      *Cory v. White*, 457 U.S. 85 (1982), the Court thrice restated the settled rule that the Eleventh
15
16   Amendment does not bar suits against state officers when they are "alleged to be acting against

17   federal or state law." These are only the two most recent in an extraordinarily long line of cases.

18    11th Amendment immunity does not prevent an action in federal court against a state official for
19
20   ultra vires actions beyond the scope of statutory authority, or pursuant to authority deemed to be

21   unconstitutional. *Pennhurst State Schcool and Hospital v. Halderman*, 465 U.S. 89 at 101-102.

22    The dissenting opinion of Justice Stevens, Brennan, Marshall and Blackmun in *Penhurst*

23   stated:

24
     The Eleventh Amendment and the doctrine of sovereign immunity it embodies have
25   never been interpreted to deprive a court of jurisdiction to grant relief against
     government officials who are engaged in conduct that is forbidden by their sovereign.
26   On the contrary, this Court has repeatedly and consistently exercised the power to
27   enjoin state officials from violating state law.

28

1  The dissent also wrote:

2      By 1908, it was firmly established that conduct of state officials under color of office
3      that is tortious as a matter of state law is not protected by the Eleventh Amendment.
       See Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 390 -391 (1894).
4

5  **Plaintiffs Have Sufficiently Pled Each Cause of Action Under FRCP 8(a)**

6
7      A ruling that Plaintiff has failed to state a claim under 12(b)(6) may be granted only in

8  extraordinary circumstances. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.

9  1981).

10     To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a plaintiff need

11  only provide a brief statement to support the claim, not establish evidence in the suit.

12     Rule 8(a)'s express language, which requires simply that the complaint "give the defendant

13  fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson,*

14

15  355 U. S. 41, 47.  A Court may dismiss a complaint only if it is clear that no relief could be granted

16  under any set of facts that could be proved consistent with the allegations. *Hishon* v. *King &*

17  *Spalding,* 467 U. S. 69, 73.

18
19     Plaintiffs' complaint easily satisfies Rule 8(a)'s requirements because it gives respondent fair

20  notice of the basis for his claims and the grounds upon which they rest.

21     The Court has never indicated that the requirements for establishing a prima facie case apply

22  to pleading.  Moreover, the precise requirements of the prima facie case can vary with the context

23  and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp.* v. *Waters,*

24  438 U. S. 567, 577.  It may be difficult to define the precise formulation of the required prima facie

25

26  case in a particular case before discovery has unearthed relevant facts and evidence.  Consequently,

27  the prima facie case should not be transposed into a rigid pleading standard for discrimination

28

cases.

Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon* v. *King & Spalding,* 467 U. S. 69, 73 (1984). If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.

The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. See *Conley, supra* , at 48. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Plaintiff's complaint satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for plaintiffs' claims. Plaintiffs allege discrimination, harassment and retaliation, on account of disability in violation of various Civil Rights statutes. The complaint details the events of the discrimination, harassment, and retaliation and the individuals involved. Defendants have notice of what the claims are and the grounds upon which they rest. In addition, they state claims upon which relief can be granted.

1          **STATE LAW CLAIMS**

2   **CONTINUING VIOLATIONS**

3       All defendants continue to retaliate against and harass Plaintiffs. Most recently the District

4   instituted Due Process proceedings against S.M. Defendants were aware that S.M. had an annual

5   I.E.P scheduled for February, 2008 yet it filed its request in December alleging that Carol Allen

6   needed to sign an addendum IEP, which was conducted in October. The harassment led to parent

7   suffering a heart attack from the stress. The district dismissed its complaint prior to the annual

8   I.E.P. S.M. was denied lunch in September 2007 and suffered other maltreatment by district staff

9   and students.

10  **Plaintiffs Claim for Tortuous Conduct of Employee Satisfies the Test for Deliberate**
    **Indifference and Allows Plaintiffs Private Damage**

11      Plaintiff states a claim based on school officials' failure to take action to stop the offensive

12  acts of those over whom the officials exercised control under 42 U. S. C. §1983.

13      Plaintiffs have alleged that the Defendants school district and school board 1) had actual

14  knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive

15  and objectively offensive that it (4) deprived S.M. and P.M> of access to the educational benefits

16  or opportunities provided by the school.  *Davis v. Monroe County Bd. Of Education* (1999) 526

17  U.S. 629.

18      *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. established that a recipient of federal

19  funds that intentionally violates Title IX, is subject to a private damages action, where the

20  recipient is deliberately indifferent to known acts of teacher-student discrimination. Indeed,

21  whether viewed as "discrimination" or "subject[ing]" students to discrimination, Title IX

"[u]nquestionably . . .placed on [the Board] the duty not" to permit teacher- student harassment in its schools, *Franklin v. Gwinnett County Public Schools*, 503 U. S. 60 (1992) supra, at 75, and recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct.

In *Gebser* and *Franklin* students brought suit under Title IX of the Education Amendments alleging they had been subject to continual sexual harassment and abuse by a teacher. The Supreme Court in *Franklin* held that a damages remedy is available for an action brought to enforce Title IX, and that Title IX is enforceable through an implied right of action. The Court in *Gebser* held that a district would be liable if it had actual notice and was deliberately indifferent.

*Gebser* Court discussed *Franklin* and its use of Title IX cases in determining discrimination under Title VII. The Franklin Court stated "Unquestionably, Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and 'when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex.' *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student."

The anti-discrimination of Title IX is similar to that of Title II of the American With Disabilities Act. Title IX provides in pertinent part that, "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

The same standards should apply when an administrator or school staff harasses and abuses a student based upon disability under Title II of the ADA. Title II of the ADA is parallel to Title VII and Title IX, except Title II prohibits disability discrimination while the others

1    prohibit race and sex discrimination. The three statutes operate in the same manner, conditioning

2    an offer of federal funding on a promise by the recipient not to discriminate, in what amounts

3    essentially to a contract between the Government and the recipient of funds.

4

5    **CALIFORNIA CODES PERMITTING TORT ACTIONS**

6    Cal Civil Code section 3294(b) provides, 3294. That code states in part,

7    (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear

8    and convincing evidence that the defendant has been guilty of oppression, fraud, or malice,the

9    plaintiff, in addition to the actual damages, may recover damages for the sake of example and by

10   way of punishing the defendant.

11

12       Plaintiff has alleged this causes of action which includes, Negligence, Emotional Distress,

13   Physical Torts, and ratification of acts by District once the abuses were made known to them or

14   when they should have known. Plaintiffs do not object to amending complaint to list each tort

15

16   separately.

17

18                                   **CONCLUSION**

19    Plaintiffs claims are not barred by the March 7, 2007 settlement agreement nor the January 10,

20   2007, Order of Dismissal of Honorable Claudia Wilken.

21

22    Plaintiffs possess causes of action under Federal law which, rights are enforceable against

23   defendants either individually, in their official capacities and against the West Contra Costa School

24   District.

25       Plaintiff should be allowed to amend to present a more definite statement.

26

27

28

1

2   DATED: December 22, 2006                    /s/  Nicole Hodge

3                                               By: Nicole Hodge
                                                Attorney for Plaintiffs
4                                               Carol Allen and  P.M. S.M. by and through
                                                their next
5                                               friend and parent Carol Allen

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HODGE LAW
P.O. Box 5100