1 | THOMAS F. BERTRAND, ESQ., SBN 056560
MICHAEL C. WENZEL, ESQ., SBN 215388
2 | BERTRAND, FOX & ELLIOT
The Waterfront Building
3 | 2749 Hyde Street
San Francisco, CA 94109
4 | Telephone: (415) 353-0999
Facsimile: (415) 353-0990

5

6 | *Attorneys for multiple Defendants (see signature
page for complete list of parties represented;* Civil
L.R. 3-4(a)(1))

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

9 | S.M, a minor by his parent and next friend
Carol Allen, P.M. a minor by his parent and
10 | next friend Carol Allen and CAROL ALLEN

CASE NO. C07-05829 CRB

11 | Plaintiffs,

12 | vs.

Date:   March 28, 2008
Time:   10:00 a.m.
Courtroom:  8, 19th Floor

13 | WEST CONTRA COSTA COUNTY
UNIFIED SCHOOL DISTRICT FINANCING
CORPORATION a California Municipality,
14 | WEST CONTRA COSTA UNIFIED
SCHOOL DISTRICT BOARD OF
15 | EDUCATION, in their official capacities,
BRUCE HARTER in his capacity as
16 | Superintendent and as an individual,
WENDELL GREER, in his official capacity,
17 | and as an individual HARRY CULBERTSON
as an individual and in his official capacity,
18 | STEVE COLLINS in his official capacity,
DARLENE JONES in her official capacity,
19 | KEN TALKEN in his official capacity,
GRAIG CROSSLEY as an individual and in
20 | his official capacity, DOE NICHOLSON, as
an individual and DOES 1-10,
21

Complaint filed: November 16, 2007

Defendants.

22

23

24 | **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS
25 | NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION (RULE (12)(b)(1)) AND/OR FAILURE TO
26 | STATE A CLAIM RULE (12(b)(6)); AND IN THE ALTERNATIVE MOTION FOR
MORE DEFINITE STATEMENT (Rule 12(e))**
27

28

1

**TABLE OF CONTENTS**

2    I.    RESPONSE TO PLAINTIFFS' PRELIMINARY STATEMENT.................................1

3    II.   THE PARTIES' SETTLEMENT AGREEMENT EXTENDS TO THE
          INDIVIDUALLY NAMED DEFENDANTS...............................................................1

4

5    III.  PLAINTIFFS COMPLAINT CLEARLY ASSERTS CLAIMS "ARISING FROM
          OR RELATED TO" S.M.'S EDUCATIONAL PROGRAM .....................................2

6

     IV.   JUDGE WILKEN's PRIOR ORDER IS PROPERLY CONSIDERED...........................6

7

8    V.    PUBLIC POLICY AND ENFORCEABILITY OF SETTLEMENT AGREEMENT...........6

9          1.    The Parties March 7, 2007 Settlement Agreement Does Not Violate
                Public Policy And Contains Adequate Consideration....................................7

10

11         2.    Plaintiffs' Claim That The Settlement Agreement Was Entered Into
                Involuntary Is Absurd...................................................................................9

12
     VI.   PLAINTIFFS S.M. AND ALLEN's FIRST, FOURTH, EIGHTH AND ELEVENTH
13         CAUSES OF ACTION, UNDER §1983 SHOULD BE DISMISSED................................11

14   VII.  PLAINTIFF P.M.'S CLAIMS ARE SUBJECT TO DISMISSAL...................................12

15   VIII. P.M. DOES NOT HAVE STANDING TO REQUEST INJUNCTIVE
          RELIEF...........................................................................................................12

16

17
     IX.   UNDER THE 11TH AMENDMENT, THE DISTRICT, ITS BOARD AND THE
18         INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE IMMUNE
          FROM §1983 CLAIMS FOR MONEY DAMAGES AND FROM STATE LAW
19         CLAIMS............................................................................................................12

20   X.    PLAINTIFFS' "NEGLIGENCE", "EMOTIONAL DISTRESS" AND
          "TORTUOUS CONDUCT OF AN EMPLOYEE" SHOULD BE DISMISSED...................14
21

22   XI.   PLAINTIFFS' CLAIM FOR "TORTUOUS CONDUCT OF AN EMPLOYEE"
          SHOULD BE DISMISSED...................................................................................14
23

24   XII.  PLAINTIFFS' SEVENTH CLAIM FOR "EMOTIONAL DISTRESS" SHOULD
          BE DISMISSED.................................................................................................15
25

     XIII. DEFENDANTS' ARE ENTITLED TO A MORE DEFINITE STATEMENT...................15
26

27   XIV. CONCLUSION....................................................................................................15

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Belanger v. Madera Unified School Dist.*

4
    963 F.2d 248 (1992)..................................................................................13

5

*Blair v. Shanahan*

    28 F.3d 1514 (9th Cir. 1994) .....................................................................12

6

*Blanchard v. Morton Sch. Dist.*

7
    2007 U.S. App. LEXIS 27940 (9th Cir. Wash. Dec. 3, 2007)..................10

8

*Burke v. Barnes*

9
    279 U.S. 361 (1987)..................................................................................12

10

*Cholla Ready Mix, Inc. v. Civish*

    382 F.3d 969 (9th Cir. 2004) ....................................................................13

11

*Cole v. Oroville Union High Sch. Dist.*

12
    228 F.3d 1092 (9th Cir. 2000) ..................................................................13

13

*Cory v. White*

14
    457 U.S. 85 (1982)....................................................................................12

15

*Florida Dept. of State v. Treasure Salvors, Inc.*

    458 U.S. 670, 697 (1982)..........................................................................13

16

*Han v. Department of Justice*

17
    45 F.3d 333 (9th Cir. 2000) ......................................................................13

18

*Jackson v. Birmingham Board of Education*

19
    544 U.S. 167 (2005)..................................................................................11

20

*M.J. v. Clovis Unified Sch. Dist.*

    2007 U.S. Dist. LEXIS 28761 (E.D. 2007) ..............................................8

21

*M.J. v. Fresno County*

22
    2006 U.S. Dist. LEXIS 66346 (E.D. 2006) ..............................................8

23

*Maleki v. Los Angeles Unified School Dist.*

24
    160 Fed Appx. 586 (9th Cir. 2005)..........................................................13

25

*Pedraza v. Alameda Unified Sch. Dist.*

    2007 U.S. Dist. LEXIS 26541  (N.D. 2007)..............................................8

26

*Pennhurst State School and Hospital v. Halderman*

27
    465 U.S. 89 (1984)...............................................................................12, 13

28

*R.K. v. Hayward Unified Sch. Dist.,*

2007 U.S. Dist. LEXIS 72950 (N.D.Cal 2007) ................................................8

*Riggle v. California,*
577 F.2d 579 (9th Cir. 1978) ................................................13

*Vinson v. Thomas*
288 F.4d 1145 (9th Cir. 2002) ................................................10, 14

*W.B. v. Matula*
67 F.3d 484 (3rd Cir. 1995) ................................................7, 8

*Witte v. Clark*
197 F.3d 1271 (9th Cir. 1999) ................................................5

<u>Statutes</u>

42 U.S.C. Section 1983 ................................................passim

Calfornia Education Code Section 56505(f) ................................................4

California Civil Code Section 3294(b) ................................................14

California Education Code Section 56028.5 ................................................1

California Education Code Section 56501(a) ................................................1, 4

California Education Code Section 56501(b)(4) ................................................4

California Education Code Section 56505(c)(1) ................................................4

California Education Code Section 56505(g) ................................................4

California Government Code Section 818 ................................................14

Federal Rules of Civil Procedure Rule 8(a) ................................................15

I.    **RESPONSE TO PLAINTIFFS' PRELIMINARY STATEMENT**

Plaintiffs' "Preliminary Statement" contains numerous factual assertions not contained in plaintiffs' complaint and not supported by any actual evidence other than argument of counsel. The unsupported factual assertions should be disregarded. Moreover, to the extent plaintiff intends to amend her complaint to allege conduct that postdates the March 2007 settlement agreement, those claims will be subject to dismissal based on failure to exhaust administrative remedies.

II.    **THE PARTIES' SETTLEMENT AGREEMENT EXTENDS TO THE INDIVIDUALLY NAMED DEFENDANTS**

Plaintiffs assert that the release contained in the parties' settlement agreement does not extend to defendants not specifically listed in the agreement. Plaintiffs have cited no authority in support of this contention. A due process complaint is properly brought against a "public agency", not an individual. Cal. Ed. Code §56501(a) A public agency is defined as " a school district, county office of education, special education local plan area, charter school, or any other public agency under the auspices of the state or any political subdivisions of the state providing special education or related services to individuals with exceptional needs." Cal. Ed. Code §56028.5

To construe a settlement agreement reached as a result of a due process filing in the limited fashion suggested by plaintiffs would eviscerate the resolution process utilized in due process hearings, namely, mediated or unmediated settlement agreements. Plaintiffs' assertions are even more absurd given plaintiffs due process complaint against the DISTRICT and claims against the DISTRICT in this lawsuit are based on the "tortuous conduct" of its employees.

Moreover, even if the Court were to accept plaintiffs' contention that the March 7, 2007 settlement agreement does not apply to individual defendants named herein because those individuals were not identified parties in plaintiffs' due process complaint and therefore not signatories to the settlement agreement, it would follow that plaintiff has not exhausted administrative remedies as to those individual defendants, and therefore claims against individual defendants would be subject to dismissal for failure to exhaust administrative remedies.

The March 2007 settlement agreement bars plaintiffs' claims arising from or related to S.M.'s educational program, and was entered into after plaintiff filed her due process complaints. The release contained in the settlement agreement bars plaintiffs' education related claims as to the

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                                    1

DISTRICT and those acting on behalf of the DISTRICT, which can only act through its employees. Interpretation of the release contained in the settlement agreement in any other fashion would produce absurd results and permit individuals to avoid the IDEA's exhaustion requirements by simply suing individual employees in state or federal Court in lieu of first bringing a due process complaint against a school district as a form of exhaustion.

### III.    PLAINTIFFS COMPLAINT CLEARLY ASSERTS CLAIMS "ARISING FROM OR RELATED TO" S.M.'S EDUCATIONAL PROGRAM

Plaintiffs' assertion in their opposition that the release contained in the parties' March 7, 2007 settlement agreement does not bar their claims in this lawsuit because their claims do not arise from or relate to S.M's educational program and because they are not asking the Court to resolve educational issues directly contradicts the allegations in the complaint, the contents of their due process complaints, and runs counter to the conclusion reached by the Honorable Claudia Wilken. Plaintiffs' suggestion that their complaint merely "presents the educational background" is likewise absurd. While plaintiffs may not have intended to assert education related claims under federal statutes clearly barred by the parties' settlement agreement, that is exactly what they did in their complaint. Just as in their prior complaint dismissed by Judge Wilken, plaintiffs allege multiple allegations which center on the alleged failure of defendants to provide a FAPE.  These include:

> S.M.'s special education needs were not recognized or met within the district. Because his needs were improperly dealt with and ignored, S.M.'s disability manifested itself and became worse, and he suffered grave emotional harm and physical abuse. (Complaint at ¶14.)

> Plaintiffs' allege that defendant WCCUD [sic] by its pattern and practices do not comply with I.E.P.'s and make little effort to implement IEP's in a manner useful to the student and instead focus on discipline. (Complaint at ¶28.)

> Defendants failed to properly develop and follow the I.E.P. for Plaintiff S.M. as required by IDEA.  As a result, plaintiff received no educational benefit from placement in regular classes of Defendant school system and has not been provided with a free and appropriate public education. (Complaint at ¶82.)

Moreover, in their third cause of action, plaintiffs seek "injunctive relief and damages due to a violation" of the IDEA. In their Fourth Cause of Action plaintiffs allege that defendants "effectively denied Plaintiff S.M. and P.M. the full benefits of the schools programs and activities that were available to other students". In their Eighth Cause of Action, plaintiffs seek "injunctive relief" against the DISTRICT requiring "that all teachers be trained to recognize the characteristics

1    of special education students". These claims are clearly "education related" and are virtually

2    identical to those previously found by Judge Wilken to be subject to exhaustion under the IDEA

3    and therefore necessarily related to S.M.'s educational program.

4    Plaintiffs also assert in their opposition that the IDEA exclusively defines the term

5    "educational program" as stated in the March 7, 2007 settlement agreement. This limited

6    interpretation of "educational program" completely ignores the fact that the settlement agreement

7    itself contains a waiver of suits arising from or relating to S.M.'s educational program under not

8    only the IDEA, but also §1983, Section 504 of the Rehabilitation Act, the ADA and the California

9    Education Code, and specifically includes a waiver of claims raised in or related to their OAH

10   complaints. Singular reliance on the text of the IDEA to narrowly define "educational program" as

11   set forth in the settlement agreement is nonsensical. In addition, plaintiffs' reliance on the IDEA's

12   definition of "related services" is misplaced as the release that bars plaintiffs' claims is not limited

13   to the IDEA definition of "related services", but instead precludes any claims related to the S.M.'s

14   educational program, including claims and issues raised in their due process complaints.

15   Furthermore, plaintiffs' assertion on page 7 of their opposition that "physical punishment,

16   hazing, verbal abuse or cruelty to a child" cannot "arise from or relate to" an educational program

17   is contradicted by the very due process complaints filed by plaintiffs with the OAH. S.M.'s initial

18   due process complaint, dated December 22, 2006, specifically complains that S.M's class "has been

19   managed by rotating and occasionally non-credentialed personnel" and that S.M. "has been beat up

20   by older students". (See Due Process Complaint, Pages 3-4, attached as Exhibit 2 to the

21   Declaration of Steve Collins in Support of Defendants' Motion to Dismiss)

22   Plaintiffs' "Amended Request for Due Process Hearing", dated January 3, 2007, and under

23   the same OAH case number, alleges that S.H. "has been beat up by older students, assaulted by

24   staff". Plaintiffs further alleged in their OAH complaint that "student was placed in a situation that

25   was neither small nor structured, or supervised and he was assaulted by a high school aged student.

26   Student needed medical attention after the attack and has not been to school since the incident.

27   This was not the first time student was physically battered". (See Amended Due Process

28   Complaint, 5:9-10, 27-28; 6:1-3, attached to the Declaration of Jennifer R. Rowe in support of

Defendants' Reply Memorandum as Exhibit 1). **Plaintiffs, in their own due process complaints**

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    3

filed with the OAH, include numerous physical abuse allegations relating to S.H.'s claimed denial of FAPE. These claims unequivocally arise from and relate to S.H.'s educational program. The parties' March 7, 2007 settlement agreement resolved the very issues raised in plaintiffs' OAH complaints, including claims for denial of FAPE based in part on claims of physical abuse by DISTRICT employees and other students. The settlement agreement specifically states that it constitutes "a full and final resolution of all claims and issues arising from or related to Student's educational program", including "all of the claims and issues raised in, or related to, OAH Case No. N2006120794." To now assert that the claims brought in this lawsuit, the very same claims brought before the OAH, do not arise from or relate to S.H.'s educational program is inapposite.

Finally, the jurisdiction of the OAH to address the denial of FAPE extends beyond the narrow construct of Cal. Ed. Code §56501(a) as selectively quoted by plaintiffs in their opposition. (See Opposition, 7:20-23) Plaintiffs neglect any mention of Cal. Ed. Code §56501(b)(4), which provides the due process complainant "The right to a fair and impartial administrative hearing at the state level, before a person knowledgeable in the laws governing special education and administrative hearings, under contract with the department, pursuant to Section 56505."

Cal. Ed. Code §56505(c)(1) provides that:

> (c) (1) The hearing shall be conducted by a person who, at a minimum, shall possess knowledge of, and the ability to understand, the provisions of this part and related state statutes and implementing regulations, the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.), federal regulations pertaining to the act, and legal interpretations of this part and the federal law by federal and state courts, and who has satisfactorily completed training pursuant to this subdivision.

Likewise, plaintiffs ignore provisions in the California Education Code which allow hearing officers to provide compensatory relief under the denial of FAPE. Cal. Educ. Code §56505(f) and (g). To properly construe what claims "could have been brought in the underlying proceeding", the jurisdiction of the OAH under the IDEA must be considered in light of applicable authorities construing that jurisdiction, which establish the broad jurisdiction of the OAH to address allegations of a denial of FAPE stemming in part from claims of physical abuse. Plaintiffs due process filings with the OAH cited above alleging a denial of FAPE based in part on allegations of physical abuse establish not only that claims of physical abuse here arise from and are related to a

1   student's educational program, but also that plaintiffs agreed those claims were related to S.M.'s

2   educational program and could be redressed by the OAH hearing officer. Moreover, multiple OAH

3   decisions exist considering denial of FAPE claims that encompass an element of physical abuse,

4   whether direct abuse by a public agency employee or bullying by other students, both of which are

5   raised here. (See Exhibit 1 attached to Defendants' Request to Take Judicial Notice submitted in

6   support of Defendants' Reply Memorandum, providing OAH Decisions in which allegations of

7   physical abuse are raised in claims of denial of FAPE)

8       Finally, plaintiffs' reliance on *Witte v. Clark* 197 F.3d 1271 (9th Cir. 1999) for the

9   proposition that a Court will not require a party to exhaust administrative remedies when all

10  educational issues have already been resolved is misplaced. Unlike *Witte*, and despite plaintiffs'

11  best efforts to categorize their lawsuit as similar to *Witte*, plaintiffs' claims here were found to be

12  distinct from *Witte* and subject to exhaustion by Judge Wilken.  That exhaustion process resulted in

13  the filing of two separate due process complaints which included specific allegations of physical

14  abuse as relating to allegations that S.M. was denied a FAPE.  That exhaustion process concluded

15  with a settlement agreement that explicitly released claims asserted in those due process

16  complaints, including claims of physical abuse arising from or related to S.H.'s educational

17  program, and specifically included a waiver of claims under the IDEA, 42 U.S.C. §1983, the ADA

18  and Section 504 of the Rehabilitation Act. These previously and explicitly released education

19  related claims are the <u>exact</u> claims now being asserted in the instant complaint. Had plaintiffs

20  wished to preserve their rights to file suit based on education related claims of physical abuse under

21  these federal statutes they should have preserved their right to do so in the agreement, as they did

22  with respect to their right to file state tort law claims.

23      S.M. and ALLEN, in their original complaint, asserted claims that arose from and were

24  related to S.M's educational program. Their complaint was dismissed for failure to exhaust

25  administrative remedies. Plaintiffs then filed a due process complaint with the OAH that

26  specifically included allegations of physical abuse which they alleged in part constituted a denial of

27  FAPE. Rather than proceed to a hearing before an Administrative Law Judge, plaintiffs instead

28  agreed to resolve their claims by way of a negotiated settlement agreement.  In doing so, they

    released all claims, including claims of physical abuse, arising from or relating to S.M.'s

1   educational program under the IDEA, ADA, §1983 and Section 504 of the Rehabilitation Act.

2   **IV. JUDGE WILKEN's PRIOR ORDER IS PROPERLY CONSIDERED**

3   Plaintiffs misconstrue defendants' reliance on the January 10, 2007 order of Judge Wilken.

4   Defendants rely on that order as support for their argument that claims brought on behalf of S.M. in

5   this lawsuit, claims that are almost identical to claims brought in their prior lawsuit on behalf of

6   S.M., are education related.  Judge Wilken's ruling that the claims were subject to exhaustion

7   necessarily requires the conclusion that the claims were seeking relief available under the IDEA.

8   Claims construed as seeking relief available under the IDEA and therefore subject to exhaustion are

9   necessarily "education related".  Judge Wilken specifically ruled that plaintiff S.M.'s alleged

10  injuries in the prior lawsuit "could be redressed by the IDEA's administrative procedures and

11  remedies..." (*See* Order of Judge Wilken, p.8, attached to Defendants' Motion to Dismiss).

12  Defendants do not assert that Judge Wilken's order dismissing S.M.'s prior lawsuit on

13  almost identical grounds based on her conclusion that S.M.'s claims sought relief available under

14  the IDEA, and therefore subject to exhaustion (and therefore necessarily education related)

15  precluded the filing of <u>any</u> further lawsuit.  Defendants do however assert that the prior order of

16  Judge Wilken does provide guidance to this Court's consideration of whether the nearly identical

17  claims brought here by S.M. and ALLEN, claims already found to be education related, claims

18  previously brought in two due process complaints and explicitly resolved and released by the

19  parties' March 7, 2007 settlement agreement containing a release of education related claims, are

20  barred by that agreement.  Plaintiffs have failed to meaningfully contest this assertion.[1]

21  **V.    PUBLIC POLICY AND ENFORCEABILITY OF SETTLEMENT**
    **       AGREEMENT**

22  Plaintiffs first argue in their opposition that the settlement agreement at issue does not bar

23  S.M.'s claims in this action because those claims are not education related.  Directly contrary to

24  that argument, plaintiffs then argue that the settlement agreement itself is void as against public

25

26  _____

27  [1]  Moreover, plaintiffs' objection to the consideration of Judge Wilken's prior order is misplaced. The order and prior
    pleading are public record and provided to the Court not "to prove the truth of the contents" as asserted by plaintiff.
    Rather, the documents are provided for the very purpose that plaintiffs contend is proper, namely for the purpose of
28  reviewing the very statements contained in these documents.

1  policy and was entered into under duress, essentially admitting that if valid it would bar S.M. and

2  ALLEN's claims in this lawsuit.  However, plaintiffs' complaint is devoid of any facts that even

3  allege the existence of the settlement agreement, let alone that the settlement agreement entered

4  into was not voluntary.

5        1.      **The Parties March 7, 2007 Settlement Agreement Does Not Violate Public Policy And Contains Adequate Consideration**

6

7       Plaintiff cites *W.B. v. Matula* 67 F.3d 484 (3rd Cir. 1995) for the proposition that a

8  settlement agreement reached in an administrative proceeding that included a "release of damage"

9  claim did not bar "such claims" as a matter of law. (See Opposition, Page 9) Plaintiffs appear to

10  suggest that a validly executed settlement agreement, such as the one at issue here barring

11  plaintiffs' claims, is void on its face for either failure of consideration or because it violates public

12  policy. Plaintiffs' reliance on *Matula* is misplaced, and their opposition is devoid of any analysis of

*Matula*.

13       First, *Matula* is not binding on this Court. Second, plaintiffs blatantly misconstrue the

14  holding of *Matula*, which did not conclude that a "settlement agreement, which was made in an

15  administrative proceeding did not bar such claims as a matter of law". To the contrary, the Court in

16  *Matula,* in construing a settlement agreement reached under a clearly distinguishable procedural

17  and factual history, and containing language plainly different from the language contained in the

18  applicable settlement agreement here, held only that a dispute of fact existed in that case as to

19  whether "the Board gave any consideration for the alleged waiver" of claims. The Court so ruled in

20  the context of a history of repeated failures by the defendants, resulting in a settlement agreement

21  in which defendants essentially capitulated to all the services to which the student was statutorily

22  entitled. *Matula* at 498. Here, there are no parallel facts that would raise a question as to the

23  adequacy of consideration.

24       Third, the release at issue in *Matula* contained different language prohibiting any and all

25  future claims of any kind, and contained no limiting language such as the settlement agreement at

26  issue in this case. *Matula* not only is not controlling in this case, but its distinguishable facts render

27  it irrelevant to the question of whether the settlement agreement at issue here contains adequate

28  consideration or violates public policy.

1    Plaintiffs' assertion that the settlement agreement itself fails for lack of consideration is

2  likewise without merit.  Pursuant to the settlement agreement, the DISTRICT agreed to provide

3  certain services to plaintiff, agreed to refrain from taking certain other action, and agreed to

4  reimburse plaintiffs for their attorney's fees, payable directly to defense counsel.  In exchange,

5  plaintiffs agreed to waive certain claims, including the federal claims brought in this very lawsuit.

6  Plaintiffs' claim that the consideration (i.e. services) that the DISTRICT agreed to provide were

7  services S.M. was "entitled" to neglects the fact that plaintiffs' entitlement to the services provided

8  was dependent on her prevailing in a due process hearing and establishing an entitlement to the

9  relief sought.

10    Moreover, similar settlement agreements have been found to contain valid consideration

11  under California law. See *R.K. v. Hayward Unified Sch. Dist.,* 2007 U.S. Dist. LEXIS

12  72950 (N.D.Cal 2007). Plaintiffs' claim that the settlement agreement in this case lacks

13  consideration, if accepted, would potentially invalidate every settlement agreement reached after

14  the filing of a due process complaint. Plaintiff has cited <u>no</u> authority supporting their argument that

15  a settlement agreement similar to the agreement at issue here was found to have lacked

16  consideration. In fact, numerous other District Courts in California have considered similar

17  settlement agreements reached after a due process filing, without finding that the settlement

18  agreement itself lacked consideration for the reasons asserted here by plaintiffs.  See *M.J. v. Clovis*

19  *Unified Sch. Dist.,* 2007 U.S. Dist. LEXIS 28761 (E.D. 2007); *Pedraza v. Alameda Unified Sch.*

20  *Dist.,* 2007 U.S. Dist. LEXIS 26541  (N.D. 2007); *M.J. v. Fresno County,* 2006 U.S. Dist. LEXIS

21  66346 (E.D. 2006)

22    Likewise, plaintiffs' reliance on *Matula,* for the suggestion that a release of liability

23  provided in exchange for a school district's agreement to provide services to a student constitutes a

24  violation of public policy is misplaced. The Court in *Matula,* construing a settlement agreement

25  containing vastly broader language, specifically stated that, while it questioned "the propriety of

26  demanding and receiving a release of such claims in exchange for providing services to which a

27  disabled child is otherwise entitled", it was not rendering any determination whether such a waiver

28  would in fact be against public policy. *Matula* at 487-488.  Plaintiffs have cited no valid authority

for their assertion that a voluntary settlement agreement releasing education related claims reached

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    8

1  at a mediation of a due process complaint is void or otherwise prohibited.

2      2.     **Plaintiffs' Claim That The Settlement Agreement Was Entered Into Involuntary Is Absurd**

3

4      In a desperate attempt to avoid the preclusive effect of the March 2007 settlement

5  agreement, plaintiffs S.M. and ALLEN suggest the settlement agreement was not entered into

6  voluntarily. There is no competent and properly authenticated evidence offered in support of this

7  claim, other than reference to an OAH opinion refusing to exercise jurisdiction over plaintiffs'

8  "motion to void the settlement agreement and return the matter to the active calendar". (See Order

9  Denying Motion to Return Case to Active Calendar, filed in support of plaintiffs' opposition).

10      Plaintiffs assert this unsupported claim that the settlement agreement was not "voluntary"

11  despite clear language in the agreement stating as follows:

12          The Parties represent that they have read this Agreement in full and
understand and voluntarily agree to all of the provisions herein, free from
fraud, coercion or duress. The Parties represent that they were provided

13          with an opportunity to consult with legal counsel of their own choosing
regarding this Agreement and each of its provisions. The Parties further

14          represent that they have, as of the date of the execution of this Agreement,
the legal capacity to understand, agree to, and sign this Agreement.

15

16      Plaintiffs assert this argument despite the fact that they were represented by Counsel, who

17  signed the agreement and received payment of her legal fees under the Agreement. Amazingly, it is

18  the very counsel that represented ALLEN in the due process hearing, the very counsel that signed

19  the settlement agreement, the very counsel that received payment of $1,750 under the settlement

20  agreement for the provision of legal advice and counsel, that now suggests her own client did not

21  voluntarily execute the settlement agreement. Plaintiffs and their counsel appear to be willing to

22  accept the benefits of the agreement, including the provision of services and payment of counsel

23  fees, but appear unwilling to be bound by the very release they agreed to.

24      Moreover, even if the Court were to accept plaintiffs' unsubstantiated assertion that the

25  settlement agreement at issue was indeed entered into involuntarily or under duress, and therefore

26  invalid, such a conclusion would negate plaintiffs' required exhaustion.

27      Given the OAH's apparent refusal to hear issues related to enforcement or validity of the

28  agreement, plaintiffs' proper course of action would have been to seek to void the agreement

through a separate legal proceeding. Plaintiffs have provided no evidence they have done so or

1 intend to do so. However, plaintiffs' failure to seek to void the agreement should not prevent the

2 Court from dismissing plaintiffs' education related claims here as a finding that the settlement

3 agreement is valid and enforceable bars plaintiffs' claims under the clear and unambiguous terms of

4 the release contained in the settlement agreement.   Conversely, a finding that the settlement

5 agreement is void and unenforceable due to lack of consideration or because it was not entered into

6 voluntarily would strip away any claimed exhaustion, resulting in dismissal of this action for failure

7 to exhaust administrative remedies. Under either outcome, dismissal of plaintiff S.M.'s federal

8 claims and ALLEN's derivative claims in this action is appropriate at this time.

9 ### VI.    PLAINTIFFS S.M. AND ALLEN's FIRST, FOURTH, EIGHTH AND ELEVENTH CAUSES OF ACTION, UNDER §1983 SHOULD BE DISMISSED

10 Plaintiffs S.M. and ALLEN do not dispute that their First, Fourth, Eighth and Eleventh

11 causes of action are brought under 42 U.S.C. §1983. In fact, plaintiffs appear to assert that all

12 actions in their complaint are "actions enforceable by Plaintiffs under Section 1983." (See

13 Opposition at 11:17)  However, plaintiffs do not refute defendants' specific arguments, supported

14 by case law, that "an alleged violation of federal law may not be vindicated under §1983 where

15 Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly

16 by imbuing it with its own comprehensive remedial scheme." *Vinson v. Thomas* 288 F.4d 1145,

17 1155 (9th Cir. 2002).  More specifically, plaintiffs' do not contest defendants' arguments that their

18 claims brought under §1983 based on violations of the IDEA, Section 504 of the Rehabilitation Act

19 and Title II of the ADA are improper. *Vinson v. Thomas,* 288 F.3d 1145, 1156 (9th Cir. 2002);

20 *Blanchard v. Morton Sch. Dist.,* 2007 U.S. App. LEXIS 27940 (9th Cir. Wash. Dec. 3, 2007),

21 *petition for cert. filed* (Dec. 18, 2007) (No.07-825) Likewise, plaintiffs do not refute defendants'

22 argument that a "Section 1983" claim alone, such as exists in plaintiffs' first cause of action, fails

23 to state a claim. Nor do plaintiffs contest defendants' assertion that any claim under Title VI

24 brought on behalf of plaintiffs S.M. and ALLEN fail to state a claim based on their failure to allege

25 that S.M. was discriminated against because of his race, color or national origin.

26 Plaintiffs' S.M. and ALLEN's purported explanation of their claims in pages ten through

27 twelve of their opposition are not supported by the operative allegations that actually exist in

28 plaintiffs' complaint. Moreover, these arguments do not correlate to any particular identified cause

1    of action in the complaint, and therefore defendants cannot meaningfully respond to them.

2    **VIII.    PLAINTIFF P.M.'S CLAIMS ARE SUBJECT TO DISMISSAL**

3        Plaintiffs' opposition to defendants' motion to dismiss the First, Second, Third, Fourth,

4    Eighth, Ninth, Tenth and Eleventh causes of action as to plaintiff P.M. fails to refute the specific

5    arguments set forth by defendants in their motion to dismiss, which is supported by appropriate

6    legal authorities.  Instead, in their opposition, plaintiffs, without reference to any specific cause of

7    action, indicate P.M. has a viable claim against certain limited defendants only, despite the fact that

8    each cause of action applicable to P.M. in the actual complaint is brought against every defendant.

9    (See Opposition, 12:12-14)

10        Plaintiffs further suggest that P.M.'s claims based on disability discrimination are viable on

11    an indirect victim theory, but only as to a retaliation claim, thus limiting this argument to the

12    eleventh cause of action.[2]  First, plaintiff should be required to amend their complaint to clearly

13    state which cause of action is being asserted on behalf of which plaintiff and against which

14    defendant. Second, plaintiffs' assertion that P.M. "does not need to be disabled to suffer retaliation

15    due to opposing disability discrimination" ignores the fact that plaintiffs' complaint is devoid of

16    any facts suggesting that P.M. actually opposed disability discrimination or engaged in any other

17    protected activity relating to disability discrimination under Title II of the ADA. (See Opposition,

18    12:16-18, Complaint, Paragraphs 47-55). Third, plaintiffs' assertion that P.M. may pursue an

19    indirect victim of disability discrimination claim based upon *Jackson v. Birmingham Board of*

20    *Education* 544 U.S. 167 (2005) once again ignores the fact that the complaint is devoid of

21    allegations that P.M. ever complained to anyone regarding S.M.'s alleged mistreatment due to his

22    disability. Likewise, plaintiffs have cited no authority extending the "indirect victim" theory of

23    Title IX to claims for retaliation under Title II of the ADA, or any authority that conflicts with the

24    authority cited by defendants in support of their motion to dismiss plaintiff P.M.'s retaliation claim.

25    Plaintiffs have failed to allege that P.M. engaged in any protected activity.  Instead, they clearly

26    allege that plaintiff ALLEN, not S.M., was the individual who complained about the alleged

27    ───────────

28    [2] Plaintiffs apparently concede that their first, second, third, fourth, eighth, ninth and tenth causes of action on behalf of plaintiff P.M. based on various disability related statutes fail for the reasons stated in defendants' moving papers.

1  improper treatment of S.M..(See Complaint, Paragraphs. 48, 134, 136)    Accordingly, plaintiff

2  P.M.'s retaliation theory fails.

3  Finally, plaintiffs claim in their opposition that P.M. "alleged racial discrimination" and is a

4  "direct victim of racial discrimination", but ignore completely the specific arguments made by

5  defendants in their motion to dismiss that plaintiffs' allegations fail to support any claims on behalf

6  of P.M. based on racial discrimination under any theory. Simply alleging "racial discrimination"

7  alone is not sufficient to state a cognizable claim.

8  **VIII.  P.M. DOES NOT HAVE STANDING TO REQUEST INJUNCTIVE RELIEF.**

9  As stated by defendants in their moving papers, "Article III of the Constitution requires that

10  there be a live case or controversy at the time that a federal court decides the case." *Blair v.*

11  *Shanahan*, 28 F.3d 1514, 1518 (9th Cir. 1994)(quoting *Burke v. Barnes*, 279 U.S. 361, 363

12  (1987)).  Plaintiffs allege in Paragraph 51 of their complaint that P.M. has transferred school

13  districts.  Plaintiffs contradict their own pleading in statement by counsel, unsupported by any

14  evidence, that plaintiff P.M. "is currently attending school" in the DISTRICT.  To the extent that is

15  true, plaintiffs' complaint contained a factual contention without evidentiary support.  Defendants

16  respectfully request that if plaintiffs are given leave to amend, that they comply with the

17  requirements of Rule 11(b)(3) requiring "evidentiary support" for asserted factual contentions.

18  **IX.    UNDER THE 11TH AMENDMENT, THE DISTRICT, ITS BOARD AND
     THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES
19   ARE IMMUNE FROM §1983 CLAIMS FOR MONEY DAMAGES AND
     FROM STATE LAW CLAIMS**

20  Plaintiffs argue in their opposition that 11th Amendment Immunity "does not prevent an

21  action in federal court against a state official for *ultra vires* actions beyond the scope of statutory

22  authority", citing *Pennhurst State School and Hospital v. Halderman* 465 U.S. 89, 101-102 (1984)

23  and *Cory v. White*, 457 U.S. 85 (1982).  Plaintiffs' reliance on *Pennhurst* and *Cory* is misplaced, as

24  these cases do not support their argument that suits against state officers in their official capacity

25  are not barred by the 11th Amendment.

26  Plaintiffs are correct that in *Cory* and *Pennhurst*, the United States Supreme Court discusses

27  that state officers can be sued in federal court for *ultra vires* actions beyond the scope of statutory

28  authority.  However, the right to sue state officers is very limited.  In *Pennhurst*, the Court held that

1    state officers could not be sued in federal court and reasoned that "a state officer may be said to act

2    *ultra vires* only when he acts 'without any authority whatever.'" *Pennhurst* at 102, citing *Florida*

3    *Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 697 (1982).

4        In the present matter, plaintiffs' allegations that the individual defendants were acting

5    within the course and scope of their employment with the District are tacit admissions that each of

6    the defendant state actors was acting pursuant to authority conferred upon them or delegated to

7    them by the District.  Therefore, they were not acting "without any authority whatever" and are

8    entitled to immunity under the Eleventh Amendment.

9        The Eleventh Amendment bars claims in federal court against non-consenting states and

10    their agencies. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-102 (1984).  Further,

11    "the Eleventh Amendment bars suits against state officials in their official capacities when the

12    relief sought is retrospective or compensatory in nature." *Han v. Department of Justice,* 45 F.3d

13    333, 338 (9th Cir. 2000).  Under California law, school districts are considered state agencies for

14    the purposes of the Eleventh Amendment. *Belanger v. Madera Unified School Dist.,* 963 F.2d 248,

15    254 (1992), *cert denied,* 507 U.S. 919 (1993).  As a result, a California school district is immune

16    from suits for money damages under Section 1983.  *Id.*  In addition, the Eleventh Amendment

17    "precludes the adjudication of pendent state law claims against non consenting state defendants in

18    federal courts."  *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004).  The

19    California Tort Claims Act does not "contain a waiver of immunity which extends further than the

20    California state courts." *Riggle v. California,* 577 F.2d 579, 585-586 (9th Cir. 1978); *Cole v.*

21    *Oroville Union High Sch. Dist.,* 228 F.3d 1092, 1100 n.4. (9th Cir. 2000).

22        Finally, any attempt to argue that individual defendants are not considered to be state actors

23    and therefore not entitled to Eleventh Amendment immunity must fail.  See, *Cole, supra,* at 1100

24    n.4 (District Court correctly declined jurisdiction over claims against school district and school

25    district officials in their official capacities because California school districts are state agencies and

26    thus are immune from damage suits under the Eleventh Amendment); *Maleki v. Los Angeles*

27    *Unified School Dist.,* 160 Fed Appx. 586 (9th Cir. 2005), citing *Belanger,* supra (school district and

28    its employees in their official capacity are immune from suit because school districts and its

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                           13

1   employees are state actors for purposes of the Eleventh Amendment.)

2   **X.    PLAINTIFFS' "NEGLIGENCE", "EMOTIONAL DISTRESS" AND "TORTUOUS CONDUCT OF AN EMPLOYEE" SHOULD BE DISMISSED**

3

4   Plaintiffs fail to provide any meaningful opposition to defendants' motion to dismiss their

5   Fifth, Sixth and Seventh causes of action for failure to cite statutory authority and failure to plead

6   with the bare minimum of specificity. Plaintiffs do provide an apparently random citation to the

7   California Civil Code in their opposition, however it is unclear as to the reason for the citation.

8   Cal. Civil Code §3294(b) provides for an award of punitive damages, but, as to the DISTRICT, is

9   plainly abrogated by California Gov. Code §818.

10  **XI.    PLAINTIFFS' CLAIM FOR "TORTUOUS CONDUCT OF AN EMPLOYEE" SHOULD BE DISMISSED**

11  Plaintiffs' Sixth cause of action asserts a state law tort claim for "tortuous conduct of an

12  employee." In their opposition, plaintiffs confusingly attempt to recast this cause of action as one

13  under federal law brought pursuant to 42 U.S.C. §1983 based on Title II of the ADA. However,

14  plaintiffs' Sixth cause of action as plead clearly contains no reference to §1983 or Title II of the

15  ADA or any other federal statute. Plaintiffs attempt to clarify their Sixth cause of action as one

16  under federal law is absurd as plaintiffs clearly identify the sixth cause of action as one of their

17  "STATE LAW CLAIMS". (See heading on top of page 16 of plaintiffs' opposition). To the extent

18  plaintiffs intended to assert a federal claim in their Sixth cause of action, they failed to do so.

19  Defendants can only guess as to what plaintiffs' intend to assert by way of amendment if

20  given the opportunity, as they reference Title II of the ADA, Title VII and Title IX in their

21  opposition papers. However, plaintiffs should not be given leave to amend to assert a cause of

22  action on behalf of any of the plaintiffs under §1983 predicated on violations of Title II of the ADA

23  as the Ninth Circuit, in *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) held that a plaintiff

24  may not bring a claim under claim under §1983 predicated on a violation of Title II of the ADA

25  against state officials in their "individual capacity". Likewise, to the extent plaintiffs seek to bring

26  this cause of action against the individual defendants in their official capacities, or against the

27  DISTRICT or its BOARD, the claims are barred by the 11th Amendment for the reasons set forth in

28  defendants' motion to dismiss and above.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    14

1  To the extent plaintiffs are given leave to amend their complaint and attempt to assert an

2  entirely new cause of action in place of their state law Sixth cause of action, defendants request

3  plaintiff be directed to state which plaintiff the claim is brought on behalf of, and against which

4  defendant.  Upon proper amendment, defendants will substantively respond as appropriate.  As to

5  defendants' arguments regarding the timeliness of plaintiffs' sixth cause of action based on conduct

6  beginning "on or about September 2004", plaintiffs have provided no response in their opposition.

7  **XII.  PLAINTIFFS' SEVENTH CLAIM FOR "EMOTIONAL DISTRESS" SHOULD BE DISMISSED**

8
9  Plaintiffs have offered no meaningful opposition to the arguments of defendants set forth by

10  defendants in their motion to dismiss plaintiffs' "emotional distress" cause of action.  Plaintiffs'

11  Seventh cause of action should therefore be dismissed for the reasons set forth in defendants'

12  motion.

**XIII.  DEFENDANTS' ARE ENTITLED TO A MORE DEFINITE STATEMENT**

13  Plaintiffs argue in their opposition that they have complied with F.R.C.P. 8(a) and provided

14  "respondent fair notice of the basis for plaintiffs' claims".  (See Opposition, 15:19)  As set forth

15  more fully and completely in defendants' motion for a more definite statement, plaintiffs'

16  complaint is so deficient as to render the complaint incomprehensible in part. Plaintiffs themselves

17  assert that they "should be allowed to amend to present a more definite statement," essentially

18  acknowledging the ambiguity of their complaint. (See Opposition, 18:25)

19  **IX.  CONCLUSION**

20  Defendants' motion to dismiss addresses the adequacy of plaintiffs' complaint. Plaintiffs'

21  attempts to argue alternative theories bases on unsupported factual assertions that contrast with the

22  facts pled in their complaint in an attempt to avoid dismissal are improper. Defendants request

23  plaintiffs' complaint be dismissed in its entirety.

24  Dated: March 14, 2008                                    BERTRAND, FOX & ELLIOT

25                                                                        By: _____

26                                                                              Michael C. Wenzel

27  Attorneys for Defendants WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT, *erroneously sued as West Contra Costa County Unified School District Financing Corporation*, WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT BOARD OF

28  EDUCATION, BRUCE HARTER, WENDELL GREER, STEVE COLLINS, DARLENE JONES, KEN TALKEN, GRAIG CROSSLEY, and DOE NICHOLSON

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS                    15