NICOLE HODGE, ESQ SBN 215157
P.O. BOX 5100
OAKLAND, CA 94605
510.569.36666
hodgend@aol.com

Attorney for Plaintiffs
Carol Allen, S.M. and P.M.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.M by and through his next friend Carol Allen, P.M. by and through his next friend Carol Allen and CAROL ALLEN,<br><br>        Plaintiff,<br><br>    vs.<br><br>WEST CONTRA COSTA COUNTY UNIFIED SCHOOL DISTRICT  FINANCING CORPORATION a California Municipality, WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT  BOARD OF EDUCATION , in their official  capacities, BRUCE HARTER in his capacity as Superintendent,  WENDELL GREER, in his official capacity, HARRY CULBERTSON as an individual and in his official capacity, STEVE COLLINS as an individual and his official capacity, DARLENE JONES in her official capacity, KEN TALKEN in his official capacity, DOE TRACEY as an individual and in official capacity  DOE CANDACE as an individual and in official capacity, TERRY NICHOLSON formerly Doe Nicholson as an individual and in official capacity  and DOES 1-10<br><br>        Defendants | Case No.: No. 07-05829<br><br>PLAINTIFFS AMENDED COMPLAINT FOR DAMAGES AND INJUCTIVE RELIEF AND DEMAND FOR JURY TRIAL |

1.  Jurisdiction is conferred upon this Court pursuant to 28. U.S.C.A. Section 1331 and 28 U.S.C.A. Section 1343, because the matters in controversy arise under the Constitution and laws

of the United States. This Court has supplemental jurisdiction to hear the state claims of Plaintiff S.M., P.M. and Carol Allen. Under 28 U.S.C.A. Section 1367 (a).

2.   Venue is proper in this Court under 28 U.S.C.A. Section 1391(b) because a substantial part of the events that gave rise to Plaintiff's claims took place within the division of the District of California.

## PRELIMINARY STATEMENT

3.   This is a civil rights actions against employees, individuals and officials of West Contra Costa Unified School District for depriving Plaintiff S.H., P.M. and Carol Allen of established constitutional, statutory and common law rights.

4.   Plaintiff S.M. attended middle schools within the West Contra Costa County School District as well as Keystone-Alliant a Non Public school where West Contra Costa County placed S.M.  While attending these schools, and in response to manifestations of his disability, S.M.'s classmates and adult staff routinely subjected him to verbal and physical harassment and abuse on school grounds and during school hours.   This harassment occurred on a near-daily basis beginning sometime in August 2005 and continues to April 2008.. The only relief S.M. could obtain was when he remained home from school.

5.   S.M. was continually harangued by his classmates who teased him about his disability and his mother's physical disability, threatened to assault him, injure him, kill him, and by staff who had him handcuffed, threatened to take him to jail for non-violent behavior that is a symptom of his disability, verbally berated him, or threatened him and instructed his classmates to beat him up. He was told that he did not deserve and was not worthy to attend school within the West Contra Costa School District, he has been physically assaulted by staff and had staff watch as he was chased, screaming child off campus, and beat up by another student at the instruction of an aide . He has been disciplined for questioning a class drawing assignment that seemed to oppose his religious beliefs, he has been segregated to a campus for students with disabilities where staff regular uses physical discipline on students, and isolated from the general education population. He has suffered from the harsh discipline and general policy of abuse

defendants take towards disabled students. S.M. has been denied lunch and made to watch as his classmates ate as a form of punishment.

6.    On more than one occasion while at Keystone School, S.M. was assaulted by older students while on school property and while on the bus that transported him home.

7.    Defendants were aware of the verbal and physical harassment and abuse, they were aware of the manifestations of students disability, and had the authority to institute corrective and preventative measures, but repeatedly and intentionally failed to take the necessary measures to stop abuses S.M. suffered.  Rather than appropriately addressing the harmful behavior of other students and staff, Defendants shifted S.M. from classroom to office and office to home and school to school. When Carol Allen notified the district in writing, and protested the abuse S.M., he was suspended indefinitely and was never able to return to his school. He was told the police would be called if he set foot on campus again. He was then placed on home school after filing a request for due process and then sent to Keystone Alliant by process of an individualized educational program. Defendants' failed to act, they ratified discriminatory conduct and took affirmative actions detrimental to Plaintiffs, because of S.M.'s disability and Carol Allen's attempts to secure the rights of S.M. Defendants deprived plaintiff a right to a public education free of discrimination, abuse, harassment and retaliation.

8.   Specifically, this action challenges Defendants' denial of Plaintiffs' rights secured under the First and Fourteenth Amendments to the United States Constitution (Art I, U.S. Constitution, Art XIV, U.S. Constitution), and 42 U.S.C.A. Section 1983, the deliberate indifference and Defendants tortuous negligence, negligent supervision and training, intentional infliction of emotional distress, and negligent infliction of emotional distress under California state law.

## PARTIES

9.   S.M. is a student attending public school in the West Contra Costa Unified School District, County of Contra Costa, State of California.  Plaintiff is a child with disabilities as listed by the Individuals with Disabilities Education Act 20 U.S.C Sec 1415(e)(2),  (IDEA). P.M. is a student attending public school in the West Contra Costa Unified School District; he is African-American and a protected class. Carol Allen is mother of both S.M and P.M.

10.  Defendants' Bruce Harter, Superintendent of Schools, Harry Culbertson, former Principal of Hercules Middle school, Wendell Greer, Regional Superintendent, Terry Nicholson, classroom aide, Steve Collins, special education director, Doe Tracey, classroom aide, Doe Candace, a classroom aide, Darlene Jones, special education department leader, Ken Talken, special education department leader, Graig Crossley, assistant principal of Hercules Middle/High School are or were at all relevant times individuals working as employees of and agents of the School District, a public school district organized and operated under the laws of the State of California.  Upon information and belief, Plaintiffs allege that all Defendants currently are citizens of California.

11. Plaintiffs allege that each of the defendants performed, participated in, aided or abetted in some manner the acts averred in this action, proximately caused the damages averred below, and are liable to Plaintiffs for the damages and other relief sought in this action.

12.  Based upon information and belief, Plaintiffs allege that Defendants Bruce Harter, Steve Collins, Darlene Jones, Ken Talken, Wendell Greer were responsible for the training and supervision of Defendants Harry Culbertson , Graig Crossley, Terry Nicholson, Doe Tracey, and Doe Candace.

13. Based upon information and belief Plaintiffs allege that Defendants West Contra Costa Board of Education was responsible for the training of Defendants Harry Culbertson, Graig Crossley, Steve Collins, Wendell Greer, Bruce Harter, Ken Talken, and Darlene Jones, and Does Terry, Tracey and Candace.

## STATEMENT OF FACTS

14. Defendants' discriminatory conduct, their intentional, reckless, and negligent failure to take action to remedy the harassment and abuse of Plaintiff, and their failure to provide Plaintiff with a safe, non-discriminatory education in a suitable environment, their failure to train staff on students disabilities so that verbal and physical abuse would not be the standard response, caused Plaintiff S.M. and Carol Allen to suffer severe and extreme emotional distress and psychological damage, including but not limited to suicidal thoughts, an inability to concentrate on S.M's and Carol Allen's studies, depression, debilitating fear, despair, anger, humiliation, anxiety and a

minor heart attack for Carol Allen. Plaintiffs also suffered bodily injury, including but not limited to, physical injury, disruption of sleep, loss of appetite. As a result of Defendants' actions, Plaintiff S.M and Carol Allen sought psychological counseling. Furthermore, Plaintiff S.M. and Carol Allen lost substantial amounts of school time as a result of Defendants' actions.

15.  On or about June 2005, Plaintiff S.M. by his parent Carol Allen filed a Notice for Due Process against West Contra Costa Unified School District for the districts failure to provide necessary special education services and behavioral supports to S.M.. Parties arrived at settlement and the terms of that settlement agreement were to be implemented at the beginning of S.M.'s 6th grade year in August 2005.

16.  S.M. transitioned to middle school, where Defendant Harry Culberston suspended and disciplined him for issues related to his disability so regularly that S.M. was never able to begin the counseling services agreed to in the settlement agreement. That counseling was to help student with his known disabilities.

17. During that time S.M. was sent to the office almost daily and suspended almost weekly for behavior that related to his disability. S.M. would be sent to the office for arguing with classmates who teased him about his mother's disability. He was disciplined for telling his teacher that he didn't think he should do a project that he felt ignored the existence of his religious beliefs.

18.  S.M. would be sent to the office of Harry Culbertson nearly daily and while there Mr. Culbertson would berate and abuse S.M. On one occasion Culbertson instructed campus security to handcuff S.M. and take him home. During this episode Culbertson told S.M. he would be taken to prison.

19. Carol Allen protested this and demanded that the terms of the settlement agreement be followed and that S.M. receive the counseling that would focus on his behavior issues.  On or around November 2005, after Carol Allen made a written complaint about the abuse S.M. suffered at the hands of Mr. Culbertson, Harry Culbertson suspended S.M. and did not provide a return date and threatened that S.M. would be arrested if he attempted to return to the campus. The district ratified the conduct of Mr. Culbertson, despite the fact that it violated the educational

rights of S.M. and the IDEA, by allowing Mr Culbertson to deny S.M.'s return to school. The district asked Carol Allen to agree to home school for S.M.. Since S.M. couldn't return to school under threat of jail Ms. Allen agreed to home school as an interim placement.

20. S.M. remained home for months, the exclusion from school caused the child to become depressed, stop eating, and have suicidal thoughts and a sinking self-esteem. Parent agreed to a home teacher and in desperation later agreed to child's placement in a non-public school, Keystone Alliant, in Vallejo, California.

21. While S.M. attended school at Keystone, he was not given all services agreed to. He was beaten by high school students and on more than one occasion he was held after school. Carol Allen requires a wheel chair to be mobile and relies on paratransit to transport her. She was unable to get to the school on the occasions the school kept him. S.M. was left in Vallejo, California for hours and into the evening on those occasions as Ms. Allen searched to find him transportation home.

22. S.M. suffered greatly while at Keystone. He is not a child that fights. His disability causes him to be sensitive to teasing and he lashes out verbally, Keystone is a school where children with fighting behaviors attend and S.M. was threatened and attacked on a regular basis. He was not offered any protection.

23. At some point S.M.'s classroom teacher left Keystone, and his class was covered by aides. On one occasion the principal was off campus and S.M. was stomped in the groin by an older child and threatened on the school bus. Carol Allen felt the school was not safe, S.M lacked a teacher, she was unable to get to the school in emergencies and she asked West Contra Costa to place S.M. back within its boundaries.

24. Carol Allen and S.M. met with Defendant Graig Crossely to discuss placing S.M. in Hercules Middle School. Mr. Crossely questioned S.M. about his intent to be a good student. He asked S.M. why he wanted to return and what he would do to show his worthiness to be back in school. After S.M. poured his heart about and pleaded to come back, Mr. Crossely told him he didn't deserve to be back in the school, that he would not allow him to return to his school

because S.M. was trouble. Mr. Crossley began to berate S.M. in front of Carol Allen and then dismissed them from his office.

25. The behavior of Mr. Crossely was crushing to S.M. Mr. Crossley purposely encouraged S.M. to get his hopes up, and then toyed with him and told him what a bad person he was.

26. Plaintiff filed due process proceedings to obtain a change in placement out of Keystone. The district responded and continued to tell Ms Allen that she had to send her child back.  The district then placed Ms. Allen into truancy proceedings. In March 2007, Ms Allen settled the educational issues in the due process complaint a few days prior to the truancy hearing date.

27. Both S.M. and Carol Allen attended the March 2007 mediation. At the mediation plaintiffs requested Children's Learning Center, a non-public school as a placement. Steve Collins picked up the telephone, and claimed that he called Children's Learning Center. He informed Plaintiffs that just that morning, Children's Learning Center had a student in S.M.'s grade transfer out and that Children's Learning Center would move S.M. to the top of the waiting list and hold the place. S.M. had to settle that day to secure the placement. S.M. was extremely excited and hopeful about going back to school.  Carol Allen had telephoned the school on most days and been told there were no openings. The administrative law judge advised Petitioners not to settle then and not loose that placement and deprive the child of the school he wanted. Plaintiffs settled.

28. A few days later Plaintiffs were informed that an opening had never existed at Children's Learning Center. Defendant Steve Collins, director of special education for West Contra Costa, had only spoken with the secretary who lacked authority or dealings with admissions. The school director who handles admissions was out that day. The placement had never existed.

29. S.M. then went to enroll at Pinole Middle School. Plaintiffs felt as if the district had once again held the promise of something that it never intended to provide to convince them to stop seeking to enforce their rights. Enrollment in Pinole was made extremely difficult for parent by the school site and district and S.M. was delayed in starting.

30. While at Pinole Middle School on or about September 2007, S.M. was denied lunch as punishment. His classroom aides went to the cafeteria to get the lunch for the class and purposely

did not bring him lunch. He was required to sit in the class and watch and smell the food everyone else ate.

31. On two other occasions at Pinole Middle School, S.M. who is eligible for free lunch, and which his mother applied for, was denied lunch when he attempted to obtain it.  His mother was later told it was a mix up but it was never explained what type of mix-up caused that denial.

32.  S.M. still faces discrimination, retaliation, abuse and segregation due to the accepted practices of the district toward disabled students, his disability and his opposition to the districts policy of discrimination. The abuse goes far beyond what is necessary to manage a child with S.M's disabilities. As recently as April 4, 2008 Defendant DOE Candance grabbed S.M. by his jacket and drug him to his transport van, telling him to hurry up and saying if he did not she would push him into a student who would beat his ass. She then pushed S.M. by his head as he entered the van, causing him to trip and nearly fall into the bus driver. The school campus security saw this incident but such abuse is so common that he did not intervene or make a report. Staff does not feel the need to conduct their abuse in secrecy because it is so accepted. Doe Tracey has teased S.M. and encouraged his classmates to tease him saying things like S.M's 'mother has money." The school staff is aware that Ms Allen is physically disabled and on limited income. Students are still allowed to call his mother crippled, and no one attempts to discuss the inappropriateness of this behavior with the students.  It is known S.M. is sensitive to teasing about his mother's disability and that triggers various behaviors for him. In S.M's current placement a student punched Sean in the chest no less than 10 times and staff did nothing. He has been hit before but nothing is ever done to protect him or make him or his mother feel that attempts to protect or prevent the assaults are made.

33. In December 2007, over a month after Plaintiffs filed their lawsuit in U.S. District Court Northern District of California, and not long before the holidays, West Contra Costa filed a Due Process Notice against S.M.  West Contra Costa Unified alleged that the Due Process was filed due to parent's failure to sign an October 207 amendment I.EP.  Plaintiffs allege the Complaint was filed to harass and retaliate against Plaintiffs. Parties counsel had a prior agreement from September 2007 to contact counsel if an issue arose regarding S.M's educational program.

Plaintiff's counsel would be notified and then speak to Carol Allen regarding what things meant. West Contra Costa ignored that agreement and filed its complaint. West Contra Costa was aware that S.M. had his annual Individual Education Program (hereinafter I.E.P) in February 2008. The district later dismissed its complaint due to the February 2008 I.E.P.

34. The combined stress of having the districts continuous harassment of plaintiff Carol Allen, S.M. and P.M. and the abusive filing of a due process claim, was too great of stress upon Carol Allen. She suffered a minor stroke.  She became ill and was unable to contact counsel to assist her with that due process matter.

35. Throughout the course of Defendants abuse, Plaintiffs Carol Allen, S.M. and P.M. complained to anyone they could think to complain to. Ms. Allen complained to Darlene Jones when her child was denied lunch, Ken Talken, and others who she could contact within the special education office. P.M. complained to Graig Crossley about the treatment of his brother and made attempts to protect him from the beatings he received from older students. Plaintiff made her complaints of the discrimination based upon disability, known to the districts general counsel and the result was an indefinite suspension of S.M. Any complaints she made caused the district to respond negatively to she and her children. The district would hold amendment I.E.P's so often that even that became harassing, because Ms Allen had to arrange for transportation in a van and that required notice.

36. Plaintiffs further allege that the December 2007 Due Process Request, which was based on an amended IEP was filed by West Contra Costa Unified with the purpose of gaining an advantage in this instant litigation and to further harass Plaintiffs. Defendant West Contra Costa County attempted to speed to mediation in January 2008, knowing that S.M.'s annual I.E.P. is held in February 2008, in an effort to reach a settlement that would attempt to gain them a waiver of claims.  Plaintiff declined mediation and the district notified parent a short time later that it had scheduled the annual I.E.P. for S.M.

37. At all relevant times, Defendants were acting within the course and scope of their employment and under color of state and local law.

38. The specific incidents of discrimination, harassment and failure to take action alleged in this complaint are merely representative, not exhaustive.  A complete list of the incidents suffered by Plaintiff S.M. and Carol Allen during S.M.'s middle school years in West Contra Costa would be too lengthy to detail in this complaint.

39.  On numerous occasions Plaintiffs reported the incidents of harassment and abuse suffered to individual defendants.

40.   Defendants failed to take steps to address or prevent the harm to Plaintiff S.M, including but not limited  to, disciplining students or staff who harassed Plaintiffs; fully investigating complaints of harassment and abuse, educating faculty and students about the District policies and procedures; and training faculty and students so as to prevent discrimination or harassment in the future.

41.   The acts and omissions of Defendants not only failed to remedy, but also fostered and promoted, the harassment of Plaintiffs by others.

42.   Defendants' direct actions in physically, verbally and emotionally disciplining student because of the manifestation of his disability instead of providing assistance in light  of his disability and then attempting to censor S.M from complaining, further harmed him.

43.  As a direct, legal and proximate result of Defendants' violations of Plaintiffs legal rights, Plaintiffs have been injured in an amount well in excess of $75,000.

44.   Upon information and belief, Defendants have policies and procedures to prevent and remedy harassment, discrimination, and or/violence suffered by all students and take appropriate action to prevent or remedy such harms for African-American students and disabled students, yet did not do so for Plaintiff S.M. or P.M.

45.  The acts and omissions alleged above by Defendants were committed with deliberate indifference towards the well-being and rights of Plaintiffs.

46. All of the acts or omissions alleged above by Defendants were committed intentionally and purposefully because of disability.

47.  The acts or omissions alleged above by Defendants were committed intentionally and purposefully because of the race of S.M. and P.M. and disability of S.M.

48. The acts or omissions alleged above by Defendants were committed intentionally and purposefully because of Plaintiffs S.M., Carol Allen and P.M., actions to protect the rights of S.M.

49. At all times relevant to this action, Defendants were acting in a ministerial, operational, and non-discretionary capacity and/or performing ministerial operational and non-discretionary functions or duties.

50. Defendants owed Plaintiff a duty of care to ensure the safety and well-being of Plaintiff S.M. and P.M. and all students.  This overall duty of care encompassed a duty to supervise the conduct of staff and students, to enforce rules and regulations necessary for the protection of students, and to take appropriate measures to protect students from the misconduct of staff and other students. Defendants, in the course and scope of their duties as employees of District had a duty to exercise due care to protect Plaintiff from harassment and misconduct by students and other Defendants. Encompassed within Defendants' duty to protect Plaintiff and other students was a duty to exercise due care in investigating Plaintiffs complaints of assault, harassment, and discrimination, to take reasonable precautions to protect Plaintiffs from harassment, assaults, abuse and discrimination that reasonably could  anticipated to; to make police reports of the crimes; to take prompt and appropriate action to protect Plaintiffs from further harassment and fear, to remove dangerous staff from the school if necessary, to prevent segregation of disabled students in school social settings, train aids in managing disabled students without physical or verbal injury, instruct students about non discrimination of disabled students.  Defendants owed every duty alleged in this paragraph to Plaintiffs.

51. At all relevant times to this action, Defendants owed a ministerial, operational, and non-discretionary duty to Plaintiff to take reasonable care in training and supervising their employees and subordinates.

## FIRST CLAIM FOR RELIEF

Art. XIV, U.S. Constitution, Equal Protection on the Basis of Disability and Race  42 U.S.C.A. Section 1983

52. Plaintiffs P.M.  incorporates by reference and realleges paragraphs 1 to 51 of this Complaint.

53.  Beginning with the fall 2006 school semester and continuing until P.M. transferred schools, P.M. was harassed and discriminated against based upon his race and gender and in retaliation for opposing the treatment of S.M. Mr. Crossley made negative comments to P.M about his brother S.M. P.M. was retaliated against and faced regular harassment after he and his mother Carol Allen, spoke out against the treatment of his brother S.M and after his mother complained about things P.M. told Mr. Crossley said.

54.  Graig Crossley spoke to P.M. about the low expectations he held of black males and made racially disparaging comments to P.M. Mr. Crossley would meet P.M. before P.M. entered the school campus and begin his harassment. He would punish P.M. for wearing a hat on his way to school, and take it before he arrived on campus. He would then telephone Carol Allen and tell her P.M. was in trouble. P.M. was punished for seeking assistance when he felt faint after being in the head with a basketball. Carol Allen was called and told he would be suspended.  P.M. was disciplined for complaining that his teacher had spat in his face. He was told his teachers could do what they wanted and he was disciplined for making the complaint. P.M. questioned why he was being singled out and was disciplined for his questioning. The harassment and constant punishment became so bad that P.M. was forced to leave his home school and attend another school within West Contra Costa County School District to end the harassment.

55. The above-described conduct by Defendants violated the right of Plaintiff P.M not to be deprived of equal protection of the laws on the basis of disability and race under the Fourteenth Amendment to the United States Constitutions (Art. XIV, U.S. Constitution.)

56. Plaintiff requests the Court to issue an injunction ordering that Defendants cease its practice of discrimination, harassment, segregation, discipline for attempting to protect rights, and that the Court award compensatory and punitive damages to be determined according to proof by Plaintiff against all Defendants in their individual and official capacities.

## SECOND CLAIM FOR RELIEF

Art. XIV, U.S. Constitution, Equal Protection on the Basis of Disability 42 U.S.C.A. Section 1983

57. Plaintiffs S.M. incorporates by reference and realleges paragraphs 1 to 51 of this complaint.

58. The above-described conduct by Defendants violated the right of Plaintiff S.M not to be deprived of equal protection of the laws on the basis of disability under the Fourteenth Amendment to the United States Constitution (Art. XIV, U.S. Constitution.)

59. Plaintiff requests the Court to issue an injunction ordering that Defendants cease its practice of discrimination, harassment, segregation, isolation, physical discipline, verbal put downs, denial of meals used on S.M. a non-violent and disabled child, that the court order West Contra Costa Unified to train and supervise all of its staff on disabilities and appropriate ways to respond to the manifestation of those disabilities and that the Court award compensatory and punitive damages to be determined according to proof by Plaintiff against all Defendants in their individual capacities.

## THIRD CLAIM FOR RELIEF

ART I. U.S. Constitution, FREEDOM OF SPEECH 42 U.S.C.A. Section 1983

60. Plaintiffs P.M., S.M. and Carol Allen incorporate by reference and reallege paragraphs 1 to 51 and 53 to 54 of this complaint.

61. The above-described conduct by Defendants' violated the right of Plaintiffs to be free from retaliatory treatment based upon the exercise of their freedom of speech of the First Amendment to the United States Constitution Art I. U.S. Constitution by censoring and chilling Plaintiffs' right to free speech and deterring them from exercising their First Amendment rights.

62. Plaintiffs request the Court to issue and injunction ordering that Defendants cease its discrimination of disabled students by segregating them at times such as lunch and school-wide functions, that the district cease its course of retaliation by holding speedy amendment IEP's and changing the child's placement when a parent makes a complaint, and that the Court award compensatory and punitive damages in an amount to be determined according to proof by Plaintiff against all Defendants in their individual and official capacities.

## FOURTH CLAIM FOR RELIEF

Discrimination in Federally Funded Programs 29 U.S.C.. 794 and Section 504 of the Rehabilitation Act of 1973
(Against all Defendants)

63.  Plaintiffs incorporate by reference and reallege paragraphs 1-51 of this Complaint.

64.  29 U.S.C. ß 794(a) provides: "No otherwise qualified individual with a disability in the United States. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

65.  West Contra Costa Unified School District receives federal financial assistance and thus is bound to abide by 29 U.S.C. ß 794(a) and the terms of Section 504 of the Rehabilitation Act of 1973 (hereinafter Section 504) and its implementing regulations, including 34 CFR Part 104.

66.  Eleventh Amendment immunity of the WCCUSD was abrogated by Congress in its enactment of 42 U.S.C. ß2000d-7.

67.  Defendants WCCUSD, WCCUSD Board, Bruce Harter, Steve Collins, Darlene Jones, Harry Culbertson, Graig Crossley, Wendell Greer, and Ken Talken allowed the creation of an intimidating, hostile, offensive and abusive school environment for S.m on school grounds and during school hours.

68. The acts that created the intimidating, hostile, offensive and abusive school environment were done by individuals directly under the control of Defendants WCCUSD, WCCUSD Board, Bruce Harter, Steve Collins, Darlene Jones, Wendell Greer, and Ken Talken.

69. The acts occurred in the normal operation of the federally assisted recipient.

70. Defendants WCCUSD, WCCUSD Board, Bruce Harter, Steve Collins, Darlene Jones, Wendell Greer, Ken Talken had or should have had actual knowledge of the acts that harassed and discriminated against S.M and showed deliberate indifference to the severe, pervasive, objectively offensive and persistent harassment of Sean and intentionally discriminated against Sean by consciously and/or recklessly disregarding the consequences of their acts or omissions.

71. Defendants WCCUSD, WCCUSD Board, Steve Collins, Darlene Jones, Wendell Greer, Ken Talken, and Bruce Harter the superintendent displayed deliberate indifference to the

complaints of Plaintiffs S.M and Carol Allen, Defendants WCCUSD and school administration failed to investigate and failed to make attempts to remedy or end the harassment.

72.  Defendant WCCUSD failed to train its teachers, administrators, and/or staff in dealing with students with disabilities and failed to ensure that disabled students rights weren't being violated resulting in discrimination against S.M as a disabled student.

73.  Defendants violation of 29 U.S.C. ß 794(a)) and the terms of Section 504 of the Rehabilitation Act of 1973, and its implementing regulations have caused and without judicial intervention will continue to cause plaintiffs to suffer tremendous harm and humiliation in that they have been and will continue to be subjected to WCCUSD and all other defendants practice of disability discrimination.

### FIFTH CAUSE OF ACTION

NEGLIGENCE

74.  Plaintiffs incorporates by reference and realleges paragraphs 1 to 51 and 53 to 54 of this complaint.

75.  Defendants' negligently failed to protect Plaintiff from regular, pervasive and offensive embarrassment, harassment, put downs, and physical attacks by staff, and students and the discrimination based upon the disabilities of Plaintiff S.M.  Defendants' negligent failure to protect Plaintiff from harassment, abuse, assaults, and discrimination was done in bad faith.

76.  As a direct and proximate cause of the negligence of defendants, Plaintiff S.M., Carol Allen, and P.M. suffered physical injury, and emotional distress.  Plaintiff S.M was further denied the benefits of a desegregated public school environment.

71.  Defendant WCCUSD and WCCUSD Board of Directors employees were acting in the scope of their employment, under Defendant WCCUSD and WCCUSD Board of Directors control and in furtherance of Defendant WCCUSD interests at the time their negligence caused Plaintiffs injuries as described in Plaintiffs complaint.

72.  Plaintiff requests that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against West Contra Costa Unified School District, Harry Culbertson as an individual and official capacity, Graig Crossley as an individual and

official capacity, Terry Nicholson as an individual and official capacity, Doe Candance as an individual and official capacity, Doe Tracey as an individual and official capacity, Steve Collins as an individual and official capacity, in their official capacities Bruce Harter, Ken Talken, Darlene Jones.

### SIXTH CAUSE OF ACTION
NEGLIGENT TRAINING AND SUPERVISION
20 U.S.C. 1400 and 42 U.S.C. 1983, Common Law Claim

73.    Plaintiffs incorporate by reference and reallege paragraphs 1- 51  of this Complaint.

74.    Defendants, acting under color of law and in concert with one another, have violated plaintiffs' rights secured by the constitution and federal and state laws.

75.    Defendants WCCUSD, WCCUSD Board, Bruce Harter, Steve Collins, Darlene Jones, Wendell Greer, Ken Talken acting under their governmental authority have failed to adequately train and supervise their employees and subordinates that work with children with disabilities. Defendants' negligent failure to train and supervise was done in bad faith.

76.   Defendants have authorized conduct that abuse and punish students for displaying their disabilities.  In this instance Plaintiff S.M. was physically and verbally punished, belittled, attacked and disciplined for his disability which included a short attention span, behavioral difficulties, inability to perform well without modifications, and for requiring more attention than general education students.

77.   Defendants acted in reckless or conscious disregard of Plaintiffs needs and rights under the Individuals with Disabilities Education Act and the Americans with Disabilities Act.

78.   The districts failure to train is staff led its staff to respond to students behavior with physical and verbal aggression.

79.   As a result of defendants' negligence, plaintiffs S.M, P.M, and Carol Allen, suffered physical and emotional injuries alleged in this complaint.  Plaintiff S.M was further denied the benefits of a desegregated public school environment.

80.   Plaintiff requests that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against West Contra Costa Unified School District,

Harry Culbertson, as an individual and official capacity, Graig Crossley as an individual and official capacity, Terry Nicholson as an individual and official capacity, Doe Candace as an individual and official capacity, Doe Tracey as an individual and official capacity, Steve Collins as an individual and official capacity, Bruce Harter, Ken Talken, Darlene Jones.

81. There are 13 disabling conditions defined in federal regulations, Plaintiffs further seek injunctive relief to require the West Contra Costa Unified School District to train its staff in recognizing these conditions and responding appropriately, inoffensively and without abuse.

## SEVENTH CLAIM FOR RELIEF

Americans With Disabilities Act, Equal Protection Clause and 29 U.S.C. 794

(against all Defendants)

82.. Plaintiffs incorporate by reference and reallege paragraphs 1-51 of this Complaint.

83. Title II of the Disabilities Act, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132.

84. Defendants, acting under color of law and in concert with one another, have violated plaintiffs' rights secured by the constitution and federal and state laws.

85. Plaintiffs allege that the acts described in this complaint gave Plaintiff S.M. with a lesser benefit than was given to others, that he was and has been segregated, isolated, punished and shunned, due to his disability and limited Plaintiff Sean's enjoyment of the rights and benefits provided other students of the West Contra Costa Unified School District.

86. Plaintiffs request that the Court award compensatory damages against Defendants in their official and individual capacities in an amount to be awarded according to proof and an injunction requiring the district to end its practice of segregating its special education students in school wide social settings.

# EIGHTH CLAIM FOR RELIEF

## RETALIATION

87. Plaintiffs incorporate by reference and reallege paragraphs 1-51 of this Complaint.

88. S.M, Carol Allen and P.M, claims that staff at Hercules Middle School and West Contra Costa Unified School District retaliated against them for opposing, protesting disability discrimination and filing a due process complaint against West Contra Costa Unified.

89. S.M., P.M. and Carol Allen opposed the districts discrimination and abuse of S.M. based on his disability.

90. WCCUD began taking harassing and abusive action against S.M., which included multiple suspensions, multiple amendment IEP meetings, removal from class activities S.M. and P.M. enjoyed, being removed from the company of other students, constant and unfair disciplinary actions including forcing S.M. to spend multiple hours in the office as punishment for behavior that had been identified as part of his disability, denial of counseling services, having the school safety officer handcuff Sean, making unnecessary multiple and constant calls to Carol Allen to report the slightest incident S.M. and P.M. experienced and sending him home and making regular threats to S.M. and causing him to fear being arrested, disciplining P.M. for being hit in the head with a ball and other events where discipline was not required.

91. That S.M. and Carol Allen's opposition to the discriminatory and harassing practice was a motivating reason for West Contra Costa Unified and Harry Culbertson's decision to regularly discipline S.M. and then suspend S.M. from school without a return date and Graig Crossely's decision to begin harassing and disciplining P.M.

92. S.M., P.M. and Carol Allen were harmed by the districts acts and the actions of WCCUD caused both S.M, P.M. and Carol Allen, a great deal of stress and feelings of helpless and caused Carol Allen's grades to plummet.

93. WCCUD continued to retaliate against Carol Allen by harassing her oldest son who is in the district and;

94. That WCCUD retaliatory conduct was a substantial factor in causing harm to all Plaintiffs'.

Plaintiffs request that the Court award compensatory damages in an amount to be awarded according to proof.

## NINTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(against all Defendants)

95.  Plaintiffs incorporate by reference and reallege paragraphs 1- 51 and 53-54 of this Complaint.

96. The acts of defendants as described in this Complaint, breached their duties, were extreme and occurred regularly and consistently from the start of 2005  through the present were and have been done willfully, maliciously, outrageously, deliberately and purposely with the intention to inflict emotional distress upon Plaintiffs and/or were done in reckless disregard of the probability of causing plaintiffs emotional distress and these acts did in fact result in severe and extreme emotional distress.

97. As a direct and proximate result of the acts of defendants alleged herein, plaintiff was caused to suffer severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness, weight gain, depression, lowering of self-esteem and anxiety.  Plaintiffs continues to suffer these emotional upheavals.  For this harm, Plaintiffs request compensatory damages and punitive damages in the sum of in excess of $75,000.

98. As a direct and proximate result of the acts of defendant alleged herein, Plaintiff was caused to seek counseling or therapy.  Plaintiff S.M. and his mother will need counseling for an indeterminate amount of time and request compensatory damages in the amount in excess of $100,000.

## TENTH CLAIM FOR RELIEF

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(against all Defendants)

99.  Plaintiffs incorporate by reference and reallege paragraphs 1- 51 and 53-54 of this Complaint.

100. Defendants owed Plaintiff a ministerial, operational, and non-discretionary duty to take reasonable precautions to protect Plaintiff from harassment, abuse, assaults and discrimination

that could have been reasonably anticipated.

101. Defendants' negligently failed to protect Plaintiff from harassment, abuse, assaults, and discrimination based upon his could have been reasonable anticipated. Defendants' negligent failure to protect Plaintiff from harassment, abuse, assaults, and tion based upon his disability was done in bad faith.

102. As a proximate result of the acts of defendants alleged herein, plaintiff was caused to suffer severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness, weight gain, weight loss, depression, lowering of self-esteem and anxiety. Carol Allen suffered a stroke as a result of the constant stress placed upon her and watching her children be abused, but being unable to stop it under the threat of truancy proceedings. For this harm, Plaintiffs request compensatory damages and punitive damages in the sum of in excess of $75,000.

103. As a direct and proximate result of the acts of defendant alleged herein, Plaintiff was caused to seek counseling or therapy.

104. Plaintiff requests that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against Defendants in their official and individual capacities.


WHEREFORE, Plaintiffs demands judgment as follows:

1. For compensatory damages in an amount to be fixed by a jury and the Court;

2. For punitive damages in an amount to be fixed by a jury and the Court;

3. For plaintiffs' reasonable costs and attorney's fees;

4. For injunctive relief and,

5 . For such other relief as this Court deems just and proper under the circumstances.

### Jury Trial Demand

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, and Rule 3-6, Local Rules, United States District Court, Northern District of California, plaintiffs demand trial by jury for all the issues plead herein so triable.

1

2
Dated this 7th day of April, 2008

3
By /s/ Nicole Hodge

4
Nicole Hodge, Esq.
Attorney for Plaintiffs S.M.,
P.M. and Carol Allen

5

6
P.O. Box 5100
Oakland, Ca 946 05

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28